**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**BOYCE IRON WORKS, INC., Appellee.**

No. 14612.

Court of Appeals of Texas, Austin.

Jan. 28, 1987.

Rehearing Denied March 25, 1987.

Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellant.

Todd Wade, Brown, Maroney, Rose, Barber & Dye, Austin, for appellee.

Before SHANNON, C.J., and EARL W. SMITH and GAMMAGE, JJ.

SHANNON, Chief Justice.

Appellee Boyce Iron Works sued appellant Southwestern Bell Telephone and others [1] in the district court of Travis County for property damages resulting from a fire. After a trial to a jury, the district court rendered judgment for Boyce for $229,596.88 in actual damages, $110,937.99 for prejudgment interest, $500,000 in "additional" damages, and attorney's fees. This Court will reverse the judgment and here render judgment that Boyce take nothing from the telephone company.

The Boyce Iron Works offices burned during the early morning hours of October 10, 1981. The fire started during a burglary of the premises. Boyce's offices were served by a "silent" burglar alarm system installed in 1974 by Master Burglar Alarm. A silent alarm system is one which, when triggered, does not make noise but instead shows an interruption in a circuit on the alarm company's control panel at its offices. The alarm company's equipment and relays at Boyce were connected to the alarm company's office through a private line circuit provided by the telephone company.

---

1. Boyce also sued Master Burglar Alarm and United Security, a security service which was under contract to Boyce.

On Friday, October 9, 1981, at 4:30 p.m., the monitoring equipment indicated an unknown problem with the Boyce alarm system. Lloyd Ligon, president of the alarm company, attempted to test for the problem. The cause of the problem could have been in the alarm company's equipment or in the telephone line, although Ligon thought that it was in the telephone line. Ligon did not proceed on to Boyce's premises to check the connection between the alarm system and the telephone line or to check the alarm equipment. Although Ligon thought the problem was in the telephone line, he did not report the problem to the telephone company.

Meanwhile, by 5:00 p.m. Boyce's employee had informed L.W. Spillar, Jr., Executive Vice President of Boyce, of the problem in the Boyce alarm system. Spillar sent the employee home, closed the office, and, instead of reporting the problem to the alarm company or to the telephone company, went to pick up his wife from work. Spillar then returned to the office at 5:30 p.m. and called the alarm company to report the problem just before 6:00 p.m.

At that time, Ligon told Spillar that he thought the problem was in the telephone line and that Ligon could call the telephone company to report the problem but, in his personal opinion, he "didn't think it would do any good" and that there would be no response from the telephone company before Monday. Although Ligon offered to go out to Boyce's office to look at the system, Spillar replied that there would be no point in the trip to the office if the problem were in the telephone line. Instead, Spillar suggested that he call Ligon again the following morning about the alarm. Ligon did not call the telephone company to report the problem, nor did Spillar insist that the telephone company be notified, nor did Spillar, himself, report the problem to the telephone company. Early the next morning Spillar received a telephone call that there was a fire at Boyce's office and when he arrived the office was ablaze.

Boyce's scheme for burglar protection was further thwarted since the security service employed by Boyce failed to patrol Boyce's premises during the evening of October 10.

In its suit against the telephone company and the alarm company, Boyce asserted that the malfunction of the alarm system made possible the burglars' entry into its premises. The alarm system failed to function, pleaded Boyce, "because of a defect in that part of the system supplied by Bell to [Boyce]." After pleading that a defect in the telephone company's equipment caused the alarm system to malfunction, Boyce then asserted that the telephone company was liable for its damages based, among other things, upon theories of negligence and violations of the Deceptive Trade Practices Act.

The jury answered special issues that the telephone company represented that its service had "characteristics, uses or benefits which it did not have"; that the telephone company represented that its service was of a "particular standard, quality or grade, when it was of another"; and that the telephone company engaged in an "unconscionable course of conduct" and that such course of conduct was "done knowingly"; and that such action was a producing cause of Boyce's damages. Finally, for such knowing conduct, the jury assessed the telephone company $500,000 as "additional damages."

With respect to Boyce's cause of action for negligence, the jury answered that the telephone company's conduct was negligent and that such negligence was a proximate cause of Boyce's damages.

An examination of the charge and the judgment makes clear that the district court rendered judgment predicated upon the jury's answers to the Deceptive Trade Practices issues.

The telephone company attacks the judgment by many points. We find it unnecessary to discuss more than three complaints: (1) that Boyce failed to obtain a finding that a defect in the telephone equipment played a part in the malfunction of the alarm system; and (2) and (3) that there is no evidence, or insufficient evidence, in support of the jury's finding that the tele-

phone company's misrepresentations or its course of conduct were a "producing cause" of Boyce's damages.

Boyce pitched its lawsuit against the telephone company upon the premise that a defect in the telephone equipment caused the alarm system to malfunction. Because the telephone company's liability for negligence or for violation of the Deceptive Trade Practices Act hinged upon whether or not its equipment was defective, Boyce's threshold burden was to obtain a finding that a defect in the telephone equipment played a part in the malfunction of the alarm system.[2]

The telephone company complains that Boyce never discharged its immediate burden of obtaining the seminal finding that the telephone equipment was defective. That complaint, although not solemnized by formal point of error, appears throughout the telephone company's brief and argument, and, accordingly, is sufficient to call this Court's attention to the question raised. *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478 (Tex.1943).

■■■ In defense of the judgment, Boyce advances the novel waiver thesis that the *telephone company* "failed to request a separate issue inquiring as to whether there was a problem with the line." The burden of proof is on the plaintiff to establish its case. Boyce, of course, and not the telephone company, was interested in, and would have been benefited by a factual determination that the telephone company's equipment was defective. Accordingly, the burden was on Boyce, and not the telephone company, to request a special issue and obtain an affirmative finding that the telephone equipment was defective. Hodges, Special Issue Submission in Texas § 71, p. 179 (1959 and Supp.1969). Boyce concedes, as it must, that it did not request the submission of a special issue on

that subject. The rules, of course, do not require the defendant to request the submission of the plaintiff's issues. *Rodriguez v. Higginbotham-Bailey-Logan Co.*, 172 S.W.2d 991 (Tex.Civ.App.1943, writ ref'd).

Had the evidence been conclusive that the telephone equipment was defective, Boyce would not have been required to request the submission of a special issue. The proof, however, was not conclusive. By 4:30 Friday afternoon, Ligon, the president of the alarm company, knew that there was a problem with the Boyce alarm system. The problem was either in his company's alarm equipment or in the telephone company's equipment. Without going to Boyce's premises, Ligon attempted to test for the problem. Although Ligon concluded that the problem was in the telephone equipment, he admitted on cross-examination that the trouble could have been either in the telephone equipment or in his company's equipment.

■■■ Boyce argues, finally, that the defective equipment issue was an omitted issue, supported by some evidence, which was deemed found in favor of the judgment. Tex.R.Civ.P.Ann. 279 (1977). An issue constituting a complete and independent ground of recovery is waived unless requested in substantially correct form. An "independent ground of recovery" is the total of all the facts necessary for a litigant to recover. Omitted issues, constituting only a part of a complete and independent ground and being merely supplemental or incidental to other issues submitted and answered, are deemed found in support of the judgment. Hodges, Special Issue Submission in Texas, §§ 74, 76 (1959 and Supp.1969), Tex.R.Civ.P.Ann. 279 (1977). A party may prevent omitted issues from being deemed found in support

---

**2.** Boyce's *sine qua non* burden to establish that the telephone company equipment was defective is akin to that of the plaintiff in those relatively rare suits in which the identity of the tort-feasor or wrongdoer is unknown. In those suits, the plaintiff must obtain a threshold cause-in-fact-finding that it was the defendant who piloted the plane or drove the automobile which in-

jured the plaintiff. Estate of *Whistler v. Shoemaker*, 502 S.W.2d 237 (Tex.Civ.App.1973), *aff'd*, 513 S.W.2d 10 (Tex.1974). Likewise, in a worker's compensation case, the worker must obtain an initial fact finding, if disputed, that he sustained an injury. *See* State Bar of Texas, 2 Tex. Pattern Jury Charges 15 (1970).

of the judgment by proper objection to the omission. Hodges, *supra* at 219.

■ The determination that a defect in the telephone equipment played a part in the malfunction of the alarm system does not, itself, constitute an independent ground of recovery. Instead, its affirmative determination is a necessary part of both the negligence and Deceptive Trade Practice causes of action. Accordingly, this Court has concluded that the issue of the defective equipment is an "omitted" issue and is therefore a deemed finding within the meaning of Rule 279.

The telephone company insists, however, that the issue may not be deemed found in support of the judgment because it objected to the failure of the district court to submit the omitted issue. We disagree. The telephone company relies upon its objection to special issue one which inquired "whose negligence, if any, was a proximate cause of the occurrence in question at Boyce Iron Works." The telephone company complained, in part, that special issue one "... can allow the Jury to determine that somehow Southwestern Bell was negligent because its line is down, but there has been no evidence that there was any problem with the line in this case, or, if there was one, that it was due to the negligence." This Court is satisfied that the quoted objection did not apprise the district court that the telephone company was objecting to the district court's failure to submit a special issue inquiring whether the telephone equipment was defective. The telephone company's complaint, not being meritorious, is overruled.

The telephone company claims further that the judgment of the district court is erroneous because there is no evidence, or alternatively, insufficient evidence, in support of the jury's answers to special issue number three: that the telephone company misrepresented its services or engaged in an unconscionable course of conduct and that such conduct was a producing cause of Boyce's damages.

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (Tex.1950). In reviewing factual sufficiency points of error, the reviewing court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The telephone company's employees never had any discussion with Boyce concerning the installation of the private telephone circuit line which connected Boyce's office with the alarm company's office. The only transaction between the telephone company and the alarm company consisted of the alarm company's order for the circuit line. In connection with that order, there was no evidence of any discussion of service requirements or obligations between the telephone company and the alarm company.

Boyce, however, does not contend that the telephone company misrepresented its services to appellee Boyce, but relies, instead, upon claimed misrepresentations by the telephone company in an administrative proceeding before the Public Utility Commission in a dispute between the telephone company and the Texas Alarm Signal Association. Boyce advances the unusual claim that such representations made during the course of an administrative hearing in which neither it nor the alarm company was a party constitute evidence in support of the jury's answers.

In its brief, Boyce claimed that in the agency hearing the telephone company made the following false and misleading representations concerning its burglar alarm service: that it provided good service; that repair of burglar alarm lines was a high priority item; and that it would repair burglar alarm lines after hours in case of emergency, rare emergency, genuine emergency, or when the customer insisted or became very insistent. Boyce contended, to the contrary, that the telephone company's burglar alarm repair service was not good; repair of these lines was not a priority service and Bell had a

statewide company policy that it would not make repairs after hours, regardless of the situation.

This Court has encountered considerable difficulty in verifying record support for Boyce's assertion that the telephone company made such representations in the agency hearing. Most of the record references in Boyce's brief do not support the asserted proposition, while other record references support the proposition, at best, only tangentially. For purposes of this opinion, however, this Court will assume that there is record proof that the telephone company made the representations in the agency hearing.

Boyce additionally fails to cite any authority for its premise that such representations made in an agency proceeding are even actionable pursuant to the Deceptive Trade Practices Act. Although this Court doubts that such representations are actionable, we will assume so for purposes of determining the "producing cause" question.

■ This Court has concluded that there is no evidence that any misrepresentation in the hearing or "course of conduct" by the telephone company was a producing cause of Boyce's actual damages. The district court defined "producing cause" in approved terms as meaning "an efficient, exciting, or contributing cause, which, in a natural sequence, produced the occurrence. There can be more than one producing cause." *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1976); *see also Weitzel v. Barnes*, 691 S.W.2d 598 (Tex.1985).

Several producing causes of the fire appear of record: the failure of Boyce's and the alarm company's executives to inform the telephone company of the malfunction of the alarm system; the failure of the security company to patrol Boyce's premises; and, of course, the criminal conduct of those who broke into Boyce's offices. However, Boyce has not shown, nor has this Court discovered, proof that the telephone company's course of conduct or alleged misrepresentations in the agency hearings produced or contributed to the occurrence of the fire which destroyed Boyce's property.

The commercial transaction which necessarily serves as the foundation for Boyce's Deceptive Trade Practice suit was its purchase of the protective service offered by the alarm company. As previously written, the alarm company's equipment at Boyce was connected to its office through a private line circuit provided the alarm company by the telephone company. Boyce never had any discussions with the telephone company concerning the installation of the private line circuit. The contact between the alarm company and the telephone company was limited to the alarm company's order for the circuit line. There was no proof that Boyce chose the alarm company because it was Southwestern Bell which furnished the circuit line. Further, there was no proof that Boyce had even heard of any representations, much less misrepresentations, made by the telephone company in the agency hearing. Likewise, we know of no proof that the telephone company's course of conduct in any manner caused Boyce to choose the services of the alarm company over another company. There is no proof that any representation or any course of conduct by the telephone company influenced Boyce's purchase of the alarm company's protective services. *See MacDonald v. Texaco, Inc.*, 713 S.W.2d 203 (Tex.App.1986, no writ). It follows that neither the telephone company's representations asserted in the agency hearing nor its course of conduct were the producing cause of Boyce's actual damages.

In addition, this Court has considered all of the evidence, much of which has been previously detailed. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). Without repeating our previous discussion of the record, this Court has concluded that, had it been necessary to reach the telephone company's point asserting that the evidence was insufficient to support the jury finding that the telephone company's misrepresentations or its course of conduct was a "producing cause" of Boyce's damages, this Court would have sustained it. Calvert, *"No Evidence" and "Insufficient*

*Evidence" Points of Error,* 38 Texas L.Rev. 361, 371 (1960).

 Boyce asserts by cross-point that the district court erred by failing to render judgment for it predicated upon the jury's answers to the negligence issues. First, it should be observed that Boyce obtained precisely the judgment it requested. Boyce did not move for judgment based on the negligence issues. Instead, in its motion for judgment Boyce moved that the judgment "include actual damages, prejudgment interest, additional damages and attorneys' fees." Boyce's requested relief may be obtained only by a judgment predicated upon the Deceptive Trade Practice issues. Second, Boyce made no complaint to the district court of any error in the judgment. The trial court should be afforded an opportunity to correct any errors that it might have made in the judgment. Accordingly, to complain of the judgment on appeal by crosspoint, an appellee is required to bring those errors to the court's attention in some manner whether by filing exceptions to the judgment, notice of appeal, or motion for new trial. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 336 S.W.2d 609 (1960); *Saenz Motors v. Big H. Auto Auction, Inc.,* 653 S.W.2d 521, 526 (Tex.App.1983), *aff'd,* 665 S.W.2d 756 (Tex. 1984); State Bar of Texas Appellate Procedure in Texas § 15.16 (2d ed.1979). The crosspoint is overruled.

The judgment is reversed and judgment is here rendered that Boyce take nothing.

GAMMAGE, J., not participating.