**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**BOYCE IRON WORKS, INC., Appellee.**

No. 14612.

Court of Appeals of Texas, Austin.

Jan. 18, 1989.

Rehearing Denied Feb. 15, 1989.

Robert J. Hearon, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellant.

Craig A. Morgan, Brown, Maroney, Rose, Barber & Dye and Mack Kidd, Kidd, Whitehurst & Harkness & Watson, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

SHANNON, Chief Justice.

Appellee Boyce Iron Works sued appellant Southwestern Bell Telephone Company and others [1] in the Travis County district court for property damages resulting from a fire. Boyce obtained favorable jury findings in support of its Deceptive Trade Practices–Consumer Protection Act and negligence causes of action. In response to Boyce's motion, the district court rendered judgment for Boyce for $840,534.87 based on the jury's deceptive trade practice findings. This Court reversed that judgment and rendered judgment that Boyce take nothing. 726 S.W.2d 182.

The Supreme Court granted Boyce's application for writ of error on its first point. By that point, Boyce claimed this Court erred by overruling its cross-point and not rendering judgment based upon the jury's answers to the negligence issues. This Court overruled Boyce's cross-point for *two* reasons: (1) Boyce specifically moved for judgment predicated upon the jury's answers to the deceptive trade practice issues, thereby effecting an election, and (2) Boyce waived its right to complain by cross-point in that it did not call the basis for the point to the attention of the district court. The Supreme Court reversed our judgment and remanded the cause to this Court "for consideration of Boyce's negligence claims." 747 S.W.2d 785.

We will notice only those facts necessary for consideration of "Boyce's negligence claims."

The Boyce Iron Works offices burned early Saturday morning, October 10, 1981. The fire started during a burglary of the premises. Boyce's offices were served by a "silent" burglar alarm system installed in 1974 by Master Burglar Alarm. A silent alarm system is one that, when triggered, does not make noise but instead shows an interruption in a circuit on the control panel at the alarm company's office. The alarm company's equipment at the Boyce property was connected to the control panel through a private line provided by the telephone company.

At 4:30 on the afternoon before the fire, the alarm company's monitoring equipment indicated an unknown problem with the Boyce alarm system. Lloyd Ligon, president of the alarm company, attempted to test for the problem. The cause of the problem could have been in the alarm company's equipment or in the telephone line, although Ligon thought that it was in the telephone line. Ligon did not go to Boyce's premises to check the connection between the alarm system and the telephone line or to check the alarm equipment. Although Ligon thought the problem was in the telephone line, he did not report the problem to the telephone company.

By 5:00 p.m. that afternoon a Boyce employee had informed L.W. Spillar, Jr., executive vice president of Boyce, of the problem in the Boyce alarm system. Spillar sent the employee home, closed the office, and, instead of reporting the problem to the alarm company or to the telephone

---

1. Boyce also sued two other companies, Master Burglar Alarm and United Security, a security service that was under contract to Boyce.

company, went to pick up his wife from work. Spillar then returned to the Boyce office at 5:30 p.m. and called Ligon at the alarm company to report the problem just before 6:00 p.m.

Ligon told Spillar that he thought the problem was in the telephone line and that Ligon could call the telephone company to report the problem but, in his personal opinion, he "didn't think it would do any good" and that there would be no response from the telephone company before Monday. Although Ligon offered to go out to Boyce's office to look at the system, Spillar replied that there would be no point in the trip to the office if the problem were in the telephone line. Instead, Spillar suggested that he call Ligon again the following morning about the alarm. Ligon did not call the telephone company to report the problem, nor did Spillar insist that the telephone company be notified, nor did Spillar, himself, report the problem to the telephone company. Boyce's scheme for burglar protection was further thwarted since the security service employed by Boyce failed to patrol Boyce's premises Friday night.

Early Saturday morning Spillar received a telephone call that there was a fire at Boyce's office and when he arrived the office was ablaze.

In its suit against the telephone company, Boyce asserted that the malfunction of the alarm system made possible the burglars' entry into its premises. The alarm system failed to function, pleaded Boyce, "because of a defect in that part of the system supplied by Bell to [Boyce]." After pleading that a defect in the telephone company's equipment caused the alarm system to malfunction, Boyce then asserted that the telephone company was liable for its damages based, among other things, upon negligence.

The district court submitted the cause to the jury on special issues. The court instructed the jury that with respect to the negligence issue, it could consider the telephone company's "policies, acts and omissions, if any, concerning the providing, repairing or servicing of its facilities used for burglar alarm lines, as of the date of the occurrence in question." The jury returned its answer that the telephone company was negligent and that such negligence was a proximate cause of Boyce's damages.

Boyce's premise that a defect in the telephone company's equipment was an actual cause of the alarm system malfunction was deemed found in support of the district court's judgment for Boyce. Tex.R.Civ.P. Ann. 279 (1988). 726 S.W.2d at 186.

In support of a judgment based upon negligence, Boyce focuses our attention upon the jury's finding that the telephone company's negligence was a proximate cause of Boyce's damages. Boyce emphasizes the evidence of the telephone company's alarm line policy. During the time relevant to this appeal, the Public Utility Commission required the telephone company, at a minimum, to repair ninety percent of service interruptions within eight working hours from the time the interruption was reported. The "working hours" excluded weekends, holidays, and those hours from five p.m. to eight a.m. The proof was that no such repairs would be made outside working hours except in "rare emergencies" and the witnesses could not recall very many such "rare emergencies." Various alarm company officials had complained to the Public Utility Commission of the telephone company's usual refusal to repair alarm lines after regular working hours.

Boyce then reminds this Court that the malfunction of the alarm system in this appeal became evident to the alarm company and to Boyce at 4:30 and 5:00 p.m. respectively on Friday afternoon. Boyce suggests that under the evidence it was excused from notifying the telephone company of the possible defect in the alarm line at that time because such notification would have been futile. Futile, asserts Boyce, because the evidence indicates that the telephone company probably would not have responded and repaired the alarm line until Monday whereas the burglars burned the premises early Saturday morning.

Contrary to appellee's argument, this Court does not view the problem in this appeal to be one of negligence nor of proximate cause. Instead, the controlling question is one of duty. Stated differently, the relevant inquiry is what rule of law protected Boyce's interest (the telephone company's duty), instead of whether the telephone company's conduct violated the rule that protected Boyce's interest (negligence), or whether the telephone company's violation of such rule caused Boyce's damages (proximate cause). *See* Green, Rationale of Proximate Cause 2 (1976).

■ The telephone company has a duty, among other things, to reasonably respond and repair its equipment. The telephone company, of course, did not respond and repair on October 9. That fact is not dispositive, however, because the telephone company was never informed about any problem in the system. The narrow issue in this appeal, then, is whether there is a duty to reasonably respond to and repair all possible defects or only those of which the telephone company has been put on notice. In other words, did the telephone company's duty to reasonably respond and repair its equipment protect Boyce even though Boyce did not notify the telephone company of a possible problem in its equipment?

Boyce urges the only position that could justify a judgment based on negligence: notification of the telephone company was not necessary. Boyce advances two theories to permit the Court to determine that notice was unnecessary. First, Boyce asserts that the telephone company's real fault was its failure to adopt an acceptable repair policy. This theory requires the Court to impose a new duty on the utility to adopt reasonable policies. The limits of such suggested duty are unclear. Must the reasonable policy be implemented with reasonable speed? Must the utility review the policy after a reasonable time? Further, such suggested duty imposes burdens upon a utility over and above those contemplated by the Public Utility Regulatory Act, *See* Tex.Rev.Civ.Stat.Ann. art. 1446c § 16(a) and § 18(a) *et seq,* and the rules of the Public Utility Commission.

Boyce's second theory is that because the law does not require parties to take actions which are futile, *cf. City of Gladewater v. Pike,* 727 S.W.2d 514 (Tex.1987), and because reporting the suspected defect would have been futile, Boyce was legally excused from providing notice to the telephone company.

■ Although notification of the telephone company may have had no immediate practical effect, notice was not futile to the extent that legal liability cannot exist without it. Therefore, Boyce's resort to a legal maxim cannot serve as a substitute for an element of a cause of action.

By whatever theory, Boyce claims that the telephone company had the duty to respond and repair its equipment even though it did not know of any possible problem in the lines. The duty urged by Boyce is absolute, in effect, that of an insurer. We know of no Texas or other [2] authority to support such a burdensome duty, and Boyce supplies no compelling rationale for the creation of such a duty.

This Court concludes that the telephone company had the duty to reasonably respond and repair its equipment at the Boyce premises only upon notification of a problem in its equipment.

Boyce's cross-point is overruled.

---

**2.** The rule in the several states is that a telephone company is not an insurer. 74 Am.Jr.2d

§ 38 (1974).