C.J. DOE, Individually and as Next Friend of C.G. Doe, Her minor Child, V.M. Coe, Individually, and J.M. Coe, Individually, and as Next Friends of R.M. Coe and A.C. Coe, Their Minor Grandchildren, Petitioners,

v.

BOYS CLUBS OF GREATER DALLAS, INC., Respondent.

No. 94–0281.

Supreme Court of Texas.

Argued Dec. 13, 1994.

Decided June 8, 1995.

Kip A. Petroff, Dallas, for petitioners.

John R. Robinson, Donald G. Stanford, Michael F. Pezzulli, Dallas, for respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, ENOCH and OWEN, Justices, join.

This is a suit against a boys club for damages arising from the sexual molestation of boys by a volunteer worker. The plaintiffs brought a cause of action primarily based on negligence and the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). Tex.Bus. & Com.Code §§ 17.46(b)(5), 17.46(b)(23), 17.50(a). The trial court granted summary judgment for the Boys Clubs of Greater Dallas, Inc., and the court of appeals affirmed. 868 S.W.2d 942. Because we hold that the plaintiffs failed to raise fact issues on key elements of each of their claims against the Boys Club, particularly on the elements of proximate and producing cause,

we affirm the judgment of the court of appeals.

### I.

In 1985, Boyd Ray Mullens was convicted of the misdemeanor offense of driving while intoxicated and ordered by the court to perform sixty hours of community service. (This was Mullens's second DWI conviction. The first one occurred in California in 1974.) The Dallas County adult probation department referred Mullens to a volunteer center for assignment to a community service organization. Neither the probation department nor the volunteer center, which provides referral services solely for probationers, investigates volunteers or attempts to determine the appropriateness of a volunteer's choice of organizations. Mullens volunteered to perform his community service hours at the Boys Club in Mesquite, Texas.

The Boys Club had Mullens fill out an application. On the application, he indicated that the club should not contact his employer, a sheriff's department. The Boys Club did not contact his employer, in any other manner screen the application, or independently investigate Mullens. Mullens began working at the Boys Club in March 1986, and finished his sixty hours of service in September of the same year. He continued to volunteer at the Boys Club through the summer of 1987.

The plaintiffs are (1) the minor brothers, A.C. and R.M. Coe, (2) their grandparents and guardians, Mrs. V.M. Coe and Mr. J.M. Coe, individually and as next friends of the Coe brothers, (3) the minor, C.G. Doe, and (4) his mother, Ms. C.J. Doe, individually and as his next friend. In brief, this case arose from Mullens's sexual assaults of the three minor plaintiffs, as well as other young boys not parties to this appeal. Mullens met two of the minor plaintiffs at the Boys Club in the summer of 1986, and one minor plaintiff the following summer. He took them and their friends on various outings not sponsored by the Boys Club. During these years, Mullens also became a trusted acquaintance and family friend of the three boys' grandparents, Mr. and Mrs. Coe, and a common visitor in their home. A detailed history follows.

Prior to enrolling her grandsons at the club, Mrs. V.M. Coe telephoned the main office for the five Dallas-area Boys Clubs and spoke with a woman named Loretta. With regard to volunteers, Loretta told Mrs. Coe that the Boys Club "checked them out thoroughly." Mrs. Coe brought her grandsons, A.C. and R.M. Coe, to the Mesquite club to purchase memberships in June 1986. By the time they joined the club, Mullens had nearly finished his sixty hours of community service. The Coe brothers became acquainted with Mullens there. Mullens also visited Mr. and Mrs. Coe in their home up to ten times. Later in the summer of 1986, he proposed taking the brothers on a camping trip.

Mrs. Coe returned to the Boys Club to ask its personnel about Mullens. She was told that Mullens was a volunteer, that he worked for a sheriff's department, that the club had *no complaints about his conduct, and that "he seemed to be okay."* However, the Boys Club's education director emphasized that with regard to letting Mullens take the boys camping, "The Boys Club couldn't make that choice for her. She needed to make that decision for herself." Mr. and Mrs. Coe gave their permission for Mullens to take A.C. and R.M. Coe on the overnight camping trip. On the trip, after Mullens gave the two boys cigarettes, he sexually abused A.C. Coe. In the fall of 1986, he sexually abused R.M. Coe while on a fishing trip. Mullens continued to be a regular guest in the Coe home through 1988, and spent the night on many occasions.

The next summer, the Coe brothers' cousin, C.G. Doe, joined the Boys Club while he was spending the summer with Mr. and Mrs. Coe, his grandparents. Mr. Coe brought him to the club in July 1987, and purchased a membership for him. Mullens met C.G. Doe at the Boys Club through the Coe brothers. He first sexually abused C.G. Doe on a second private camping trip taken alone with the three boys later the summer of 1987. On this trip, Mullens gave the boys money in exchange for sexual contact with them. The record does not indicate that Mullens used alcohol to accomplish his assaults on any of *the boys who are parties to this appeal.*

The plaintiffs brought this negligence and DTPA action against the Boys Club and Mul-

lens in June 1990. Among other claims, they alleged that the Boys Club negligently accepted Mullens as a volunteer without investigation or screening, negligently failed to supervise him, failed to disclose material information about Mullens, misrepresented that the club thoroughly investigated its volunteers, and misrepresented that the club and its workers had characteristics they did not have. The trial court granted the Boys Club's motion for summary judgment and severed the action against the club from the action against Mullens.

The court of appeals affirmed summary judgment for the Boys Club. On the negligence claims, it ruled that the Boys Club owed a duty to exercise reasonable care in selecting its workers, including volunteers such as Mullens, and that the Boys Club breached this duty. 868 S.W.2d at 949–51. However, the court of appeals held as a matter of law that the Boys Club could not reasonably foresee Mullens's assaults on the boys; in the absence of an element of proximate cause, therefore, summary judgment on the plaintiffs' negligence actions was proper. *Id.* at 952. With regard to the DTPA claims for failure to disclose and for misrepresentation, the court of appeals affirmed summary judgment for the Boys Club on three grounds: (1) Mrs. Coe's decision to allow her grandsons to go camping with Mullens, after inquiring at the club about him, was not a "transaction" under the DTPA; (2) the Boys Club was not aware of Mullens's two DWI convictions, so it could not be liable to the plaintiffs for failure to disclose them; and (3) although the Boys Club may have misrepresented that it thoroughly investigated volunteers, the alleged misrepresentations were only to Mrs. Coe, and her intervening inquiry to the club and other circumstances made the misrepresentations not the producing cause of the boys' injuries as a matter of law. *Id.* at 954–55 (citing *Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956, 960 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.)).

■ The plaintiffs appeal the holdings that there was no proximate cause and no producing cause as a matter of law to support the negligence and DTPA claims, respectively. A defendant is entitled to summary judgment

if it disproves an essential element of the plaintiff's causes of action as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991) (a negligence case); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991) (a DTPA case). In reviewing a summary judgment, we consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Primarily because we conclude that the Boys Club proved as a matter of law that its conduct was not the cause in fact of the plaintiffs' injuries, we hold that summary judgment on the plaintiffs' negligence and DTPA claims was proper for want of evidence on the common element of actual causation. *See Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 164 (Tex.1995). Where noted, we also conclude that the plaintiffs' claims fail because there was no evidence to establish other requisite elements of their causes of action. Consequently, we affirm the judgment of the court of appeals.

## II.

The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Assuming without deciding that the Boys Club owed the plaintiffs the duty to exercise reasonable care in investigating its personnel and that it breached that duty, we focus on the issue whether the Boys Club's failure to investigate, screen, or supervise its volunteers proximately caused the injuries the plaintiffs allege.

The components of proximate cause are cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). These elements cannot be established by mere conjecture, guess, or speculation. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex.1980); *Farley v. MM Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). The test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about injury," without

which the harm would not have occurred. *Prudential*, 896 S.W.2d at 161 (citing *McClure*, 608 S.W.2d at 903); *see Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458–59 (Tex.1992); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988). Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *See Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968). As we stated in *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex.1939), "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries.... [and] justify the conclusion that such injury was the natural and probable result thereof." *See, e.g., Boyd v. Fuel Distribs., Inc.*, 795 S.W.2d 266, 272 (Tex.App.—Austin 1990, writ denied) (holding that a convenience store's sale of beer to an eighteen-year-old was not the cause in fact of a drunk driver's fatal car accident because the sale was to the passenger and not to the driver); *Texas Am. Bank v. Boggess*, 673 S.W.2d 398, 402 (Tex.App.— Fort Worth 1984, writ dism'd by agr.) (ruling that a bank's employment of a repossessor was not the cause in fact of the car owner's injuries since the owner was injured by a person that the repossessor had hired without the bank's knowledge). In other words, even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex.1995); *Lear Siegler*, 819 S.W.2d at 472.

We conclude that if the Boys Club breached a duty to investigate, screen, or supervise volunteers, this breach was not the cause in fact of the plaintiffs' injuries. Assuming the Boys Club had investigated Mullens's criminal record, revelation of the two misdemeanor DWI convictions would not have precluded Mullens's presence at the club. The club knew that Mullens was a probationer under court order to perform community service; further investigation would only have provided details about the nature of his offenses. There is no evidence that the Boys Club would not have taken Mullens as a volunteer if it had known he had been convicted for

driving while intoxicated. We conclude that Mullens's presence at the club was not due to breach of any duty to screen or to investigate. *See East Tex. Theatres, Inc. v. Rutledge,* 453 S.W.2d 466, 468–69 (Tex.1970) (finding no cause in fact because no evidence established that, had a theater operator removed "rowdy persons" from a balcony, the person who injured the plaintiff would have been removed). Moreover, Mullens' presence at the club was but a preliminary condition in the course of events which made possible his assaults on A.C. and R.M. Coe and on C.G. Doe. Lastly, since there is no evidence that Mullens molested or assaulted any boys at the club's premises, there is no evidence the Boys Club's alleged failure to supervise was a producing cause of the injuries to A.C. and R.M. Coe or to C.G. Doe. We hold as a matter of law that the Boys Club's failure to investigate, screen, or supervise its workers was not the cause in fact of the plaintiffs' injuries.

■ Foreseeability, the other aspect of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Nixon,* 690 S.W.2d at 549–50. The danger of injury is foreseeable if its "general character ... might reasonably have been anticipated." *Id.* at 551 (quoting *Carey,* 124 S.W.2d at 849) (emphasis omitted). The question of foreseeability, and proximate cause generally, involves a practical inquiry based on "common experience applied to human conduct." *City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex.1987) (quoting *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)). It asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *McClure,* 608 S.W.2d at 903. Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury. *See* RESTATEMENT (SECOND) OF TORTS § 435(2) (1965).

■ In this case, we agree with the court of appeals that if the Boys Club had investigated Mullens's criminal record, the resulting information would not have caused the club reasonably to anticipate his subsequent sexual assaults on the minor plaintiffs. 868 S.W.2d at 952. The prior DWI convictions did not indicate criminal conduct in any way akin to sexual assault of young boys. The course of events was such that Mullens's assaults of A.C. and R.M. Coe and C.G. Doe was so remotely related to the Boys Club's failure to investigate, screen, or supervise volunteers that no reasonable mind could anticipate the result. Mullens's prior record could not have caused the Boys Club reasonably to anticipate the danger he presented to the plaintiffs.

Because the plaintiffs' evidence did not raise a fact question concerning cause in fact or foreseeability, there was no evidence that the Boys Club's failure to investigate, screen, or supervise Mullens was the proximate cause of the boys' injuries. *See Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596–97 (Tex.1987) (in a negligent entrustment case, finding no proximate cause because the defendant's entrustment of a truck to a driver did not cause the accident, and the defendant's knowledge about the driver did not lead it to foresee the danger resulting in injury). Therefore, we affirm the judgment of the court of appeals on the negligence claims in favor of the Boys Club.

### III.

■ The plaintiffs point to the statements by the Boys Club that it thoroughly investigated volunteers and that Mullens "seemed to be okay" to support their DTPA claims that the club failed to disclose material information and made misrepresentations. The elements of these DTPA actions are: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *See* TEX.BUS. & COM.CODE § 17.50(a)(1). To prevail on their DTPA causes of action, the plaintiffs in this case would have to establish that they were "consumers." *Id.* § 17.45(4); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 (Tex.1981). Except for Ms. C.J. Doe, C.G. Doe's mother, the plaintiffs either purchased Boys Club memberships or

were the beneficiaries of memberships purchased for them. However, we do not need to determine if the plaintiffs were consumers since we conclude that the Boys Club's alleged failure to disclose and misrepresentations were not the producing causes of the plaintiffs' injuries. Assuming that the plaintiffs are consumers under the DTPA, we focus our analysis primarily on producing cause.

▮▮▮▮ First, we consider whether the Boys Club's alleged failure to disclose material information was the producing cause of the plaintiffs' injuries. To be actionable under the DTPA, a failure to disclose material information necessarily requires that the defendant have *known* the information and have failed to bring it to the plaintiff's attention. *See* TEX.BUS. & COM.CODE § 17.46(b)(23) (stating that it is unlawful to fail to "disclose information concerning . . . services which was known at the time of the transaction"); *Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex. 1982) (holding that a car dealer had no duty to disclose material facts it did not know). There is also no duty if a defendant fails to disclose material facts it should have known. *Prudential,* 896 S.W.2d at 162. This is not a case in which the defendant willfully maintained a state of ignorance in order to avoid a duty of disclosure. The summary judgment evidence reveals that had the Boys Club investigated Mullens's criminal record, the prior two DWI convictions would not have indicated his propensity to sexually abuse young boys. We conclude that the DTPA claims based on failure to disclose material facts about Mullens's proclivity to molest boys have no merit as a matter of law. The Boys Club cannot be held liable for failing to disclose information that it did not and could not have known.

▮▮▮▮ Mrs. Coe's affidavit stated that if the Boys Club's education director had disclosed to her what the director knew about Mullens—that he was a court-referred probationer serving a criminal court's order of community service—when she specifically asked about him, she would not have allowed Mullens to take her grandsons anywhere alone. Viewed in the light most favorable to the non-movant, Mrs. Coe's affidavit may raise a fact issue as to producing cause. However, the DTPA claim based on the director's failure to disclose Mullens's status nonetheless is not actionable under section 17.46(b)(23) of the DTPA. *See* TEX.BUS. & COM.CODE § 17.46(b)(23). The Boys Club's failure to disclose that Mullens was a probationer with two DWI convictions was not a false, misleading, or deceptive act under the DTPA. Under section 17.46(b)(23), information known at the time of the transaction must be withheld for the *purpose of inducing the consumer into a transaction* which the consumer would not have entered had the information been disclosed. *Id.* Furthermore, the information withheld *must concern goods or services. See generally Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 273 (Tex.1995) (explaining that a DTPA claim for failure to disclose is "not available" against a defendant which neither induced the plaintiff into a transaction nor withheld information concerning goods or services). The facts of this case do not fall within section 17.46(b)(23). The education director's failure to disclose what she knew about Mullens was not done for the purpose of inducing Mrs. Coe into a transaction, and the undisclosed information did not concern goods or services. The failure to disclose Mullens's status occurred when Mrs. Coe inquired regarding the private camping trip that Mullens proposed for A.C. and R.M. Coe. It did not arise in connection with a transaction for the acquisition of goods or services as required by section 17.46(b)(23) of the DTPA.

▮▮▮▮ We next consider whether the Boys Club's alleged misrepresentations were the producing causes of the plaintiffs' injuries. *See* TEX.BUS. & COM.CODE § 17.46(b)(5). The plaintiffs first assert that the Boys Club affirmatively endorsed Mullens to Mrs. Coe as a chaperon for the 1986 camping trip. The summary judgment evidence does not support this claim. They also claim that the producing cause of their injuries was the Boys Club's misrepresentations that it provided a "wholesome environment," that it "checked out" volunteers "thoroughly," and that Mullens "seemed to be okay." Generally, an act is false, misleading, or deceptive if

it has the capacity to deceive an "ignorant, unthinking, or credulous person." *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex.1978). The Boys Club advertised that it provided a "wholesome environment" for low-income, under-privileged boys. Mr. and Mrs. Coe likely saw the advertisement, but it did not contain an actionable representation as a matter of law. *See Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 729 (Tex.1982) (ruling that a statement of opinion by a seller in advertisements is not actionable unless it is a representation of fact or a promise to perform specific acts). Other than the advertisements, there is no evidence that the Boys Club ever made *any* representations to Mr. Coe, including when he brought C.G. Doe to join the club, to C.G. Doe, or to his mother, Ms. C.J. Doe (who did not purchase her son's membership and who did not telephone or visit the club). Thus, the misrepresentation claims of Mr. Coe, C.G. Doe, and Ms. C.J. Doe fail as a matter of law.

The Boys Club's other statements were made solely to Mrs. Coe, with regard to A.C. and R.M. Coe. Mrs. Coe was assured that the club thoroughly investigated volunteers when she telephoned the main office of the Dallas-area clubs. When Mrs. Coe visited the Boys Club to inquire about Mullens before allowing the boys to go camping with him, the club's education director told her Mullens "seemed to be okay." We consider the latter statement first.

▆▆▆▆ The Boys Club argued that the representation that Mullens "seemed to be okay" was not false. We agree. This statement should be put in context. According to Mrs. Coe, the full response to her inquiry was:

> [T]hey have never *seen him do anything wrong.*
>
> . . . .
>
> that he was a volunteer; that he ... worked for the Sheriff's department ... and that he came in at 4 o'clock in the afternoon. And that's all they told me. And that he seemed to be okay and they had no complaints. *And that was it.*

(Emphases added.) In this conversation, therefore, the statement "he seemed to be

okay" was a truthful statement that the Boys Club staff had not witnessed any misconduct by Mullens while he was at the club. Absent evidence that the defendant's statement was false, a DTPA action for misrepresentation cannot survive summary judgment. *See Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex.1980) (finding assertions that an engine housing was in "excellent" and "perfect" condition were actionable under the DTPA because they misrepresented its actual characteristics). The DTPA's purpose in making misrepresentations actionable is "to ensure that descriptions of goods or services offered for sale are accurate." *Pennington*, 606 S.W.2d at 687. In this case, the Boys Club's statement that Mullens "seemed to be okay" was accurate in context. Furthermore, because the Boys Club declined to endorse or sponsor Mullens to Mrs. Coe, telling her, "She needed to make that decision for herself," the statement that he "seemed to be okay" can hardly be said to describe goods and services offered for sale. The DTPA's purposes would not be served by holding it to be an actionable misrepresentation. *See* Tex.Bus. & Com.Code §§ 17.46(a), (b)(5).

The dissent argues that "he seemed to be okay" was a material misrepresentation which was the producing cause of the boys' injuries, based on Mrs. Coe's assertion that she would not have allowed Mullens to drive A.C. and R.M. Coe anywhere had she had known about his DWI convictions. The dissent's theory is that the statement was actionable because it could not be truthfully made about a probationer serving an order of community service for a DWI conviction. We disagree on two grounds. First, as stated, there is no evidence this statement was false. Second, even if it was false, the statement "he seemed to be okay" was not a misrepresentation that is actionable under the DTPA. When the statement was made, no transaction was occurring between Mrs. Coe and the Boys Club. The alleged misrepresentation *did not induce Mrs. Coe into doing business with the Boys Club*, and it was not the producing cause of the damages that later arose from Mullens's acts. *See Prudential*, 896 S.W.2d at 167 (Cornyn, J., concurring) (because a misrepresentation did not influence the plaintiff's behavior, conclud-

ing there was no evidence that it was the cause in fact of the plaintiff's harm); *Southwestern Bell Tel. Co. v. Boyce Iron Works, Inc.,* 726 S.W.2d 182, 187 (Tex.App.—Austin 1987) (finding no proof that a telephone company's misrepresentations influenced the plaintiff's purchase of an alarm company's services), *rev'd on other grounds,* 747 S.W.2d 785 (Tex.1988). The camping trip Mullens organized in 1986, and all subsequent outings, were not Boys Club-sponsored events.

■■■ We return to the first alleged misrepresentation. To avoid summary judgment on the DTPA claim for misrepresentation based on the Boys Club's statement that it "checked them out thoroughly," Mrs. Coe, on behalf of A.C. and R.M. Coe, had to show some evidence that the misrepresentation was the producing cause of the boys' injuries. *See Home Sav. Ass'n v. Guerra,* 733 S.W.2d 134, 136 (Tex.1987) (requiring evidence that the consumer was adversely affected by the defendant's deceptive action for liability under the DTPA). A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred. *See Prudential,* 896 S.W.2d at 161 (citing *McClure,* 608 S.W.2d at 903). For DTPA claims, the plaintiffs need only show producing cause, *id.,* and need not establish that the harm was foreseeable. *See Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914, 922 (Tex.App.—Waco 1985, writ dism'd) (stating that foreseeability is not an aspect of producing cause). Raising a fact question of producing cause, as with proximate cause, requires some evidence that the defendant's act or omission was the cause in fact of the plaintiff's injury. *Prudential,* 896 S.W.2d at 161. However, merely given a negligent act and an injury, it does not logically follow that "the two must be causally connected." *General Motors Corp. v. Saenz,* 873 S.W.2d 353, 361 n. 6 (Tex.1993). Were this so, then the plaintiffs could impose liability on the Boys Club merely by establishing that the club made misrepresentations, without any requirement of proof of causation. *See id.* In

short, the plaintiffs here had to raise a fact issue of an "unbroken causal connection" between the misrepresentation to Mrs. Coe and her grandsons' injuries. *See Texas Indem. Ins. Co. v. Staggs,* 134 Tex. 318, 134 S.W.2d 1026, 1030 (1940).

■■ In this case, notwithstanding our perspective on the evidence in favor of the plaintiffs, we conclude that the causal connection was broken. The Boys Club disproved its misrepresentation that it thoroughly investigates volunteers was the cause in fact of the boys' subsequent injuries at Mullens's hands. The events were as follows: the Coe brothers joined the club, they met Mullens, Mullens met Mr. and Mrs. Coe, and Mullens methodically proceeded to inveigle these grandparents into giving him their trust and confidence. He visited the Coe home almost every weekend the latter part of the summer of 1986, and visited even more, including weekday visits, the summer of 1987. The Coes let Mullens take the boys to lunch and to play "putt putt" golf within weeks of meeting him. According to A.C. Coe, Mullens actively deceived the Coes into placing their grandsons alone in his care. On at least ten visits to the Coes' home prior to the first camping trip, Mullens:

> Just sat there and talked to my grandparents and got to know them and stuff. . . . they would talk about child abuse and stuff and how he hated it . . . and [was] highly against drinking and doing drugs . . . he was real innocent and everything, [like] he didn't do nothing like that. . . .

Common sense tells us that the relationship between Mr. and Mrs. Coe and Mullens developed independently of the Boys Club's relationship with the Coes. When Mrs. Coe returned to the Boys Club to inquire about Mullens, the club's education director emphasized, "The Boys Club couldn't make that choice for her," and, "She needed to make that decision for herself" whether to put her grandsons in Mullens's care.[1] Given the long-term relationship Mullens fostered with

---

1. The education director's recollection corroborates Mrs. Coe's account. The director testified: "I told her it . . . wasn't something that we could recommend or not recommend to her; that it had to be her choice." She added, "The only

thing that I could have told her about him [Mullens] was that when he was at the Boys Club, his behavior was always appropriate. He was never out of line with the kids."

Mr. and Mrs. Coe, the Boys Club's statement about investigating volunteers was not the producing cause of the boys' injuries. It at most furnished an attenuated condition that made the injury possible. *See Union Pump*, 898 S.W.2d at 776; *Bell*, 434 S.W.2d at 120 (holding that what "created the condition" which makes the injury possible is not the factual cause as a matter of law). Therefore, we hold that summary judgment for the Boys Club on the plaintiffs' DTPA misrepresentation claims was proper.

For the forgoing reasons, we affirm the judgment of the court of appeals. We need not address whether negligent misrepresentation is a cause of action we would recognize in these circumstances because the plaintiffs did not plead it, address a point of error to it, or brief the matter. We also we need not consider as an alternate ground for summary judgment whether the statute of limitations has run on the plaintiffs' claims.

GAMMAGE, Justice, joined by HIGHTOWER, CORNYN and SPECTOR, Justices, dissenting.

The only issue presented in this case is whether the plaintiffs raised a genuine issue of material fact, thereby precluding summary judgment for the defendant. Because the plaintiffs' affidavits clearly raise a fact issue whether Boys Club's admitted misrepresentations produced or proximately caused the plaintiffs' injuries, I dissent.

Proximate cause requires both cause-in-fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). An act or omission is a cause-in-fact if it is a substantial factor in bringing about the injury, without which the harm would not occur. *Id.*

Before allowing the boys to go with Mullens on a camping trip which was not sponsored by Boys Club, Mrs. Coe specifically asked Allen, the Education Director at Mesquite Boys Club, about Mullens. Mrs. Coe told Allen that Mullens wanted to take the boys on the camping trip and asked her what she thought about it. Allen agreed in her deposition testimony that Mrs. Coe "specifically asked" what Allen knew about Mullens. Allen responded that Mullens "seemed to be

okay and they had no complaints," but failed to disclose the facts as she knew them: Mullens was at Boys Club to fulfill community service hours by order of a criminal court because of his conviction for DWI.

Mrs. Coe's affidavit unequivocally states that had she known that Mullens was convicted of a crime, she would not have allowed her grandchildren to go anywhere alone with him:

> If the Boys Club had disclosed that Boyd Ray Mullens had been convicted of a crime and was working at the Boys Club in order to fulfill required community service hours, I would not have permitted [the boys] to go anywhere alone with [Mullens]. I did not know that [Mullens] had been convicted of a crime until after [he] was arrested in August, 1988.... If there ever was a time that I was concerned or had doubts about Mr. Mullens, those doubts disappeared when I learned that the Boys Club had represented that they thoroughly investigated the workers to have direct contact with the children.

Boys Club admitted that, unlike the procedure it normally follows with all employees and volunteers, it did not check any of Mullens' references, did not review his police record, was not even aware of what he had been convicted, and did not in any way investigate his application even though it knew the only reason he was there was to complete part of a criminal sentence. This evidence specifically raises fact issues whether Boys Club's misrepresentations were the proximate cause of the injuries suffered by the children, that is, whether the parents and guardians of the three boys would have allowed contact with Mullens had they known of his criminal conviction.

Although the majority opinion omits any discussion of it, I believe the pleadings regarding Boys Club's failure to disclose the relevant facts about Mullens are sufficient to establish a claim for negligent misrepresentation under RESTATEMENT (SECOND) OF TORTS § 311 (1977). This is a simple negligence case to which section 311 should be applied. Section 311 of the RESTATEMENT provides as follows:

§ 311. Negligent Misrepresentation Involving Risk of Physical Harm

(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

(a) to the other, or

(b) to such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care

(a) in ascertaining the accuracy of the information, or

(b) in the matter in which it is communicated.

Comment b further provides that this section "finds particular application where it is a part of the actor's business or profession to give information upon which the safety of the recipient or a third person depends."

One Texas court of appeals has favorably cited section 311, *EDCO Prod., Inc. v. Hernandez*, 794 S.W.2d 69 (Tex.App.—San Antonio 1990, writ denied), and the following jurisdictions have adopted or followed it: *Heard v. City of New York*, 82 N.Y.2d 66, 603 N.Y.S.2d 414, 623 N.E.2d 541 (1993); *Birmingham v. Fodor's Travel Publications*, 73 Haw. 359, 833 P.2d 70 (1992); *Moore v. Commonwealth*, 846 S.W.2d 715 (Ky.Ct.App. 1992, review denied); *Thompson v. Hardy Chevrolet–Pontiac–Buick, Inc.*, 203 Ga.App. 499, 417 S.E.2d 358 (1992); *Garcia v. Superior Court*, 50 Cal.3d 728, 268 Cal.Rptr. 779, 789 P.2d 960 (1990); *Board of Educ. v. A, C & S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989); *Village of Cross Keys, Inc. v. U.S. Gypsum Co.*, 315 Md. 741, 556 A.2d 1126 (1989); *Bloskas v. Murray*, 646 P.2d 907 (1982); *Hall v. Ford Enters., Ltd.*, 445 A.2d 610 (D.C.1982); *English v. Lehigh County Auth.*, 286 Pa.Super. 312, 428 A.2d 1343 (Ct.1981).

Neither has Boys Club disproved that its misrepresentations were the producing cause of the plaintiffs' injuries under the Texas Deceptive Trade Practices Act. Producing cause encompasses different policy considerations and limitations than does proximate cause, but it includes a cause-in-fact analysis. *See Union Pump v. Allbritton*, 898 S.W.2d 773, 782–84 (Tex.1995) (Cornyn, J., concurring); *The Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 160 (Tex.1995). Although I agree that C.J. Doe was not a consumer under the DTPA, the court of appeals recognized, and Boys Club admits, that the other plaintiffs were consumers under the Act.

Viewing the evidence in the light most favorable to the nonmovants,[1] we must take as true the plaintiffs' statements that they would not have permitted the children to accompany Mullens if they had known of his criminal record and we must indulge the inference that if they had known Boys Club did absolutely no investigation into Mullens' background they would likewise not have permitted the boys to have extended contact with him away from Club-supervised events.

Upon reviewing the summary judgment evidence, the conclusion is inescapable that Boys Club has not established as a matter of law that its affirmative misrepresentations to the plaintiffs was not the producing or proximate cause of the events made the basis of this lawsuit. Whether the Coes' and Doe's decision to allow Mullens to have contact with the children was influenced by Boys Club's affirmative misrepresentations is a disputed issue of material fact.

For the foregoing reasons, I respectfully dissent. I would reverse the judgment of the court of appeals and remand this cause for trial.

---

1. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); Hittner & Liberato, *Summary Judgments in Texas*, 35 S.Tex. L.Rev. 9, 57 (1994).