Opinion issued June 28, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00476-CV






Y2K ENTERPRISES, INC. D/B/A AUTO 5 AND MUHOMMED KHALIL,
Appellants


V.


DAVID L. CARRIERE, II, Appellee






On Appeal from the County Court at Law No. 3

Fort Bend County, Texas

Trial Court Cause No. 21531







MEMORANDUM OPINION

 This is an appeal from a bench trial in which the court awarded $2,550 in
economic damages, $2,000 in mental anguish damages, and $5,883.95 in attorney's
fees to appellee, David L. Carriere, II, in his suit against appellants, Y2K Enterprises,
Inc. d/b/a Auto 5 ("Auto 5") and Muhommed Khalil. Carriere sued Auto 5 and Khalil
for, among other things, violations of the Deceptive Trade Practices Act ("DTPA"). 
In two issues, Auto 5 and Khalil argue that the trial court erred when it (1) entered a
judgment in favor of Carriere based on a violation of the DTPA and (2) awarded
attorney's fees.

 We affirm.

Facts and Procedural History

 Sometime in November 2000, Carriere phoned Auto 5 in response to its
newspaper advertisement for the sale of a 1999 Ford Ranger pickup truck (the "1999
Ford truck"). Soon thereafter, Carriere went to Auto 5 for a test drive and decided he
wanted to purchase the truck. He left a $100 deposit and returned that same day with
an additional $5,000. Mark Brackins, a salesman at Auto 5, asked Carriere whether
he would be trading in his 1980 GMC pickup truck (the "1980 GMC truck"). When
Carriere responded that he thought he could get more money if he sold it himself,
Brackins told Carriere that he thought that he could possibly help Carriere sell it.

 Sometime later that month, Carriere returned to Auto 5 to pay the remaining
$8,500 of the purchase price of the 1999 Ford truck, but when he arrived the truck
was not there. Muhommed Khalil, the owner of Auto 5, told Carriere that it had been
sold and offered to sell Carriere another truck for the same price. When Carriere
refused Khalil's offer, Khalil promised to retrieve the 1999 Ford truck.

 A few days later, Khalil told Carriere that the 1999 Ford truck had been sold
to Khalil's brother. Carriere testified that during this conversation, he and Khalil
discussed Auto 5's role in helping Carriere to sell his 1980 GMC truck.

 The day before Thanksgiving, Khalil and William Gray, an employee of
Auto 5, brought the 1999 Ford truck to the T.G.I. Fridays where Carriere was
working, and they exchanged keys. According to Carriere, when he gave his keys to
his 1980 GMC truck to Khalil, Khalil told him that it would be driven to the Auto 5
lot and would be there when Carriere arrived a few days later to complete the
paperwork for the 1999 Ford truck. According to Gray, however, after he and Khalil
left the restaurant, Khalil told him to drive the car home, which Gray did. While
parked in front of Gray's house on Thanksgiving, Carriere's 1980 GMC truck was
vandalized. The back window was broken, and $2,500 worth of stereo equipment
was stolen. 

 When Carriere arrived at Auto 5 the Saturday after Thanksgiving, he completed
the paperwork for the purchase of the 1999 Ford truck. He then went outside and
discovered that his 1980 GMC truck had been vandalized and the stereo equipment
stolen. A few days later when he discovered that his checking account was
overdrawn, Carriere realized that his checkbook had been stolen as well. Several
checks totaling $3,181.85 were written on Carriere's account. Carriere also paid
$420 in overdraft fees to his bank and $450 to various merchants for returned check
fees. 

 Khalil's version of events differs in some respects. According to Khalil,
Carriere took possession of the 1999 Ford truck before he made the final $8,500
payment. At some point before Thanksgiving, Carriere dropped off the 1999 Ford
truck so that Auto 5 could clean it. On the day before Thanksgiving, Carriere called
Khalil to tell him that although he had the $8,500 he could not leave work to drop it
off at Auto 5 and to ask whether Khalil could come to T.G.I. Fridays to pick up the
check. During that conversation, Carriere also told Khalil that, because Gray knew
someone who was interested in purchasing the 1980 GMC truck, Gray would be
driving the 1999 Ford truck to T.G.I. Fridays so that he and Gray could exchange
trucks and Gray could show the 1980 GMC truck to his friend. According to Gray,
however, Brackens had the friend who was interested in the truck.

DTPA

 In their first issue, Auto 5 and Khalil contend that the trial court erred when it
entered a judgment in favor of Carriere based on a violation of the DTPA because
(1) Carriere did not give notice of his intent to bring a DTPA claim against Auto 5
and Khalil at least 60 days before filing suit; (2) venue for the DTPA claim was
improper; and (3) the acts and practices of Auto 5 and Khalil at issue were neither
(a) committed in connection with Carriere's purchase of the 1999 Ford truck nor
(b) the producing cause of Carriere's damages. 

 Notice of Intent to Bring DTPA Claim

 Auto 5 and Khalil contend that the trial court erred when it entered a judgment
in favor of Carriere based on a violation of the DTPA because Carriere did not give
notice of his intent to bring a DTPA claim against Auto 5 and Khalil at least 60 days
before filing suit.

 Section 17.505(a) of the DTPA requires that, as a prerequisite to filing a suit
that seeks damages under section 17.50(b)(1) against any person,

 a consumer shall give written notice to the person at least 60 days before
filing the suit advising the person in reasonable detail of the consumer's
specific complaint and the amount of economic damages, damages for
mental anguish, and expenses, including attorneys' fees, if any,
reasonably incurred by the consumer in asserting the claim against the
defendant.


Tex. Bus. & Com. Code Ann. § 17.505(a) (Vernon 2002). If a plaintiff files an
action for damages under the DTPA without first giving the required notice and a
defendant timely requests an abatement, the trial court must abate the proceedings if
it determines that notice was not provided as required. Id. § 17.505(c), (d) (Vernon
2002). To be timely, the request for an abatement must be filed not later than the 30th
day after the date the person files an original answer. Id. § 17.505(c). A defendant
who fails to make a timely request for abatement waives his objection to the lack of
notice. Hines v. Hash, 843 S.W.2d 464, 469 (Tex. 1992); see Pool Co. v. Salt Grass
Exploration, Inc., 681 S.W.2d 216, 219 (Tex. App.--Houston [1st Dist.] 1984, no
pet.) (holding that failure to plead and prove notice under former section 17.50A not
fatal to action under DTPA when defendant fails to object to lack of notice). Here,
Auto 5 and Khalil failed to request an abatement in the trial court. They challenge
Carriere's lack of notice for the first time on appeal. Therefore, Auto 5 and Khalil
have waived their lack-of-notice objection. See Hines, 843 S.W.2d at 469.

 We overrule the notice of intent portion of Auto 5's and Khalil's first issue.

 Venue

 Auto 5 and Khalil next contend that the trial court erred when it entered a
judgment in favor of Carriere based on a violation of the DTPA because venue for the
DTPA claim was improper.

 The proper venue for an action brought pursuant to section 17.50 of the DTPA
is any county in which venue is proper under Chapter 15 of the Civil Practice and
Remedies Code or a county in which the defendant or an authorized agent of the
defendant solicited the transaction that is the subject of the action at bar. Tex. Bus.
& Com. Code Ann. § 17.56 (Vernon 2002). Any objection to improper venue is
waived if an objection is not made by a written motion to transfer venue that is filed
prior to or concurrently with any other plea, pleading, or motion, except a special
appearance motion. Tex. R. Civ. P. 86(1); Gordon v. Jones, 196 S.W.3d 376, 384
(Tex. App.--Houston [1st Dist.] 2006, no pet.). Here, Auto 5 and Khalil did not file
a motion to transfer venue with the trial court. They challenged Carriere's choice of
venue for the first time in a post-trial brief filed on April 5, 2006, more than two
weeks after trial. Therefore, Auto 5 and Khalil have waived their objection to Fort
Bend County as a proper venue for Carriere's DTPA claim. See Tex. R. Civ. P.
86(1); Gordon, 196 S.W.3d at 384.

 We overrule the venue portion of Auto 5's and Khalil's first issue.

 Producing Cause


 Auto 5 and Khalil next contend that the trial court erred when it entered a
judgment in favor of Carriere based on a violation of the DTPA because the acts and
practices of Auto 5 and Khalil at issue were not the producing cause of Carriere's
damages. (1) More specifically, Auto 5 and Khalil argue only that Carriere's own
negligence was the producing cause of his damages; they do not contend that Carriere
failed to produce evidence that their actions were the producing cause of his injuries. 
We interpret this argument to be a challenge to the factual sufficiency of the evidence
to support the trial court's implicit finding that the acts of Auto 5 and Khalil were a
producing cause of Carriere's damages.

 When reviewing a factual sufficiency point of error, we examine all the
evidence--i.e., the evidence that both supports and contradicts the challenged
finding. Munters Corp. v. Swissco-Young Indus., Inc., 100 S.W.3d 292, 296 (Tex.
App.--Houston [1st Dist.] 2002, pet. dism'd) (citing Lofton v. Tex. Brine Corp., 720
S.W.2d 804, 805 (Tex. 1986)). We will set aside the finding only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id.
(citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)).

 Under section 17.50(a) of the DTPA, 

 A consumer may maintain a cause of action where any of the following
constitute a producing cause of economic damages or damages for
mental anguish:



 
 the use or employment by any person of a false,
misleading, or deceptive act or practice that is:
 


 


 
 
 specifically enumerated in a subdivision of
Subsection (b) of Section 17.46 of this subchapter;
and 

 relied on by a consumer to the consumer's
detriment;
 
 


 


 
 breach of an express or implied warranty;
 


 


 
 any unconscionable action or course of action by any
person; or

 


 


 
 the use or employment by any person of an act or practice
in violation of 541, Insurance Code.

 


Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2006). A producing cause
is a substantial factor which brings about the injury and without which the injury
would not have occurred. Doe v. Boys Club, Inc., 907 S.W.2d 472, 481 (Tex. 1995). 
Under this standard, the plaintiff need not show that the harm was foreseeable. Id.

 Section 17.46(b) of the DTPA contains a laundry list of 27 unlawful deceptive
trade practices. See Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon Supp. 2006). 
In his pleadings, Carriere alleged that Auto 5 and Khalil violated only one: "failing
to disclose information concerning goods or services which was known at the time
of the transaction if such failure to disclose such information was intended to induce
the consumer into a transaction into which the consumer otherwise would not have
entered had the information been disclosed." See id. § 17.46(b)(24). 

 Carriere also alleged in his pleadings that Auto 5 and Khalil engaged in an
unconscionable action or course of action. See id. § 17.50(a)(3). Under the DTPA,
an "unconscionable action or course of action" is "an act or practice which, to a
consumer's detriment, takes advantage of the lack of knowledge, ability, experience,
or capacity of the consumer to a grossly unfair degree." Id. § 17.45(5) (Vernon
2002). 

 In support of their argument that Carriere's own negligence was the producing
cause of his injuries, Auto 5 and Khalil point to evidence in the record that Carriere
gave his keys to the 1980 GMC truck to Gray knowing that Gray was going to show
it to a friend who was interested in buying it and that this was done without Khalil's
or Auto 5's knowledge. The record contains significant evidence that contradicts
their argument, however. Carriere testified that when he told Brackins he did not
want to trade in his 1980 GMC truck because he believed he could get more money
for it selling it on his own, Brackins responded that he could possibly help Carriere
sell it. According to Carriere, Carriere also discussed this arrangement with Khalil. 
Carriere also testified that, when he and Khalil exchanged trucks at T.G.I. Fridays,
Khalil told him that his 1980 GMC truck was going to be driven to the Auto 5 lot and
would be there when Carriere arrived a few days later to complete the paperwork for
the 1999 Ford truck. According to Gray, however, after he and Khalil left the
restaurant, Khalil told him to drive the car to Gray's home. 

 In a bench trial, the trial court, as fact finder, is the sole judge of the credibility
of the witnesses. Munters, 100 S.W.3d at 296. The judge may take into consideration
all the facts and surrounding circumstances in connection with the testimony of each
witness and accept or reject all or any part of that testimony. Id. at 297. Here, the
trial court was free to reject Khalil's testimony that Carriere gave his keys to the 1980
GMC truck to Gray, knowing that Gray was going to show it to a friend, and that this
was done without Khalil's or Auto 5's knowledge and to conclude, instead, that Auto
5's and Khalil's actions were the producing cause of Carriere's damages.

 After neutrally examining all the evidence, we conclude that the verdict is not
so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. See Munters, 100 S.W.3d at 296.

 We overrule the producing cause portion of Auto 5's and Khalil's first issue.

Attorney's Fees

 In their second issue, Auto 5 and Khalil contend that Carriere was not entitled
to an award of attorney's fees because Auto 5 and Khalil did not commit deceptive
trade practices in relation to Carriere. Because we reject Auto 5's and Khalil's
argument that the verdict finding that the acts and practices of Auto 5 and Khalil at
issue were not the producing cause of Carriere's damages, we necessarily reject the
argument that they did not commit deceptive trade practices. In addition, we observe
that in making this argument, Auto 5 and Khalil cite no authority nor offer any
analysis in support of their conclusory statement that they committed no deceptive
trade practices. This issue is, therefore, also inadequately briefed. See Tex. R. App.
P. 38.1(h).

 We overrule Auto 5's and Khalil's second issue.





Conclusion

 We affirm the judgment of the trial court. 


 

 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.
1. Auto 5 and Khalil also contend that the trial court erred when it entered a judgment in favor
of Carriere based on a violation of the DTPA because the acts and practices of Auto 5 and
Khalil at issue were not committed in connection with Carriere's purchase of the 1999 Ford
truck. See Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 650 (Tex. 1996) ("[A] defendant's
deceptive trade act or practice is not actionable under the DTPA unless it was committed in
connection with the plaintiff's transaction in goods or services."). Because Auto 5 and Khalil
offer no analysis or argument in support of this conclusory statement, we conclude that this
point is inadequately briefed. See Tex. R. App. P. 38.1(h).