COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




3D/I + PERSPECTIVA, A TEXAS JOINT
VENTURE,


 Appellant,


v.


CASTNER PALMS, LTD.,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00059-CV



Appeal from the


County Court at Law No. 3


of El Paso County, Texas


(TC# 2004-4188)


O P I N I O N


 3D/I + Perspectiva ("3D/I") - a joint venture - appeals the jury's verdict for Castner Palms,
Ltd. ("Castner Palms") stemming from the latter's suit for negligence. In two issues, 3D/I contends
that the trial court erred by denying its: (1) motion for instructed verdict when Castner Palms failed
to present expert testimony applicable to a construction-management firm's standard of care in
pursuit of its negligence claim; and (2) jury instruction on the professional standard of care. Finding
3D/I's first issue dispositive, we reverse and render judgment for 3D/I.

BACKGROUND 

 From the limited record presented to this Court, it appears that Patriot Castner Joint Venture
previously owned several parcels of land, and Glen Kistenmacher, an engineer, prepared a master
drainage plan for the properties in 1994. The master drainage plan provided that each property
should include an underground pipe for proper drainage from rainwater. The pipes were not put in
and portions of those undeveloped properties were later sold to various entities, including the County
of El Paso. Nevertheless, a city ordinance required all drainage plans to conform with the existing
approved master plan.

 The County's property is adjacent to the Castner Palms' property. The properties are
separated by a rock wall. In 2002, the County contracted with 3D/I to manage the construction of
an annex building. The relevant provisions of the contract provided that the County would contract
with consultants, architect, engineers, and construction contractors to provide the design,
construction, and construction administration for the project, and that 3D/I would supervise, direct,
and manage the complete construction of the project. The contract also limited 3D/I's duties to
coordinating and scheduling the parties' work and funding, reviewing the design documents for
adherence to "requirements, clarity, constructability and completeness," making recommendations
to the County regarding design programs, design standards, guidelines, and constructability, and
guarding against defects and deficiencies in the contractor's work as set out in the contracts. The
contract further stated that 3D/I would be judged by the "standards and quality prevailing among
first-rate, nationally recognized design/construction management firms of knowledge, skill and
experience engaged in projects of similar size and complexity."

 In accordance with the contract, the County, in 2003, contracted with McCormick
Architecture, L.L.C, and Vistacon, Inc. ("Vistacon") to develop the property and build the annex. 
Vistacon, in turn, engaged Roe Engineering, L.C., ( "Roe") to perform all engineering work required
to prepare the plans for the annex. For drainage purposes, Roe designed a temporary retention pond,
and Vistacon constructed it. (1) The pond only accounted for rainwater falling on the County's property
and not for uphill water that might flow onto the property. It did not comply with the drainage
master plan; therefore, it did not conform to the city ordinance. In the course of the construction of
the annex, the retention pond overflowed during a rainstorm, causing the apartments located on the
Castner Palms' property to flood.

 At trial, Castner Palms presented expert testimony that the drainage pond was responsible
for the flooding. (2) Castner Palms did not present any evidence, apart from the contract itself, as to
the standard of care a construction-management firm of the same discipline was required to exercise
in supervising contractors. Accordingly, 3D/I moved for an instructed verdict, arguing that expert
testimony was necessary to show that it had breached the applicable standard of care: "Plaintiff has
not introduced any expert testimony of the standard of care to be exercised by an architectural firm
performing project management services similar to those provided by Defendant." In response,
Castner Palms argued that because the standard of care was contained in the contract, which was
admitted into evidence, expert testimony was unnecessary. The trial court determined that Castner
Palms was not required to present expert testimony on the professional standard of care and denied
the motion for instructed verdict.

ANALYSIS

 3D/I's first issue complains of the trial court's denial of its motion for instructed verdict. 
3D/I does not challenge Kistenmacher's expert testimony showing the poorly constructed pond was
responsible for the damage to Castner Palms. Rather, 3D/I contends that Castner Palms failed to
present expert testimony as to the standard of care exercised by a construction-management firm in
a supervisory capacity. Castner Palms responds that the jury could have relied on common
knowledge in assessing the appropriate standard of care.

Standard of Review

 To avoid an instructed verdict, Castner Palms was required to offer evidence for each element
of its negligence claim. Hager v. Romines, 913 S.W.2d 733, 734-35 (Tex. App. - Fort Worth 1995,
no writ). Thus, Castner Palms had to show 3D/I owed a legal duty to Castner Palms, 3D/I breached
that duty, and damages proximately resulted from the breach. Doe v. Boys Clubs of Greater Dallas,
Inc., 907 S.W.2d 472, 477 (Tex. 1995).

 The determination of whether expert testimony is necessary to establish negligence is a
question of law, which we review de novo. FFE Transp. Servs., Inc. v. Fulgham, 154 S.W.3d 84,
89 (Tex. 2004). Expert testimony is necessary to establish the applicable standard of care "when the
alleged negligence is of such a nature as not to be within the experience of the layman." Id. at 90;
Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982). In determining whether expert testimony is
necessary to establish negligence, we consider whether the conduct at issue involved the use of
specialized equipment and techniques unfamiliar to the ordinary person. FFE Transp. Servs., Inc.,
154 S.W.3d at 91. In such a case, the expert testimony must establish both the standard of care and
the violation of that standard. Simmons v. Briggs Equipment Trust, 221 S.W.3d 109, 114 (Tex. App.
- Houston [1st Dist.] 2006, no pet.); Hager, 913 S.W.2d at 734-35.

Application

 The pleadings alleged that 3D/I failed to properly supervise the contractors' design and
construction of the drainage retention pond. 3D/I's understanding of its contractual obligations was
that it would oversee the complete construction of the project, and facilitate the development of the
plans and the construction between the design and construction contractors, and the County. 3D/I
denied that it was responsible for ensuring that adequate provisions for drainage on the site was
sufficient to contain water that flows upon it. Rather, 3D/I claimed that was Roe's responsibility. 
According to 3D/I, its duties were limited to supervising the work as presented to it by the plans,
noting that its obligation to review the design documents only extended to a review for adherence
to requirements, clarity, constructability, and completeness. Because there were no indications of
any problems with the construction of the pond, and because Roe's plan achieved the required city
permit, 3D/I believed the plans were sufficient to discharge its responsibilities under the contract. 
 As noted before, the contract between the County and 3D/I stated that 3D/I would be judged
by the "standards and quality prevailing among first-rate, nationally recognized design/construction
management firms of knowledge, skill and experience engaged in projects of similar size and
complexity." In other words, the contract provided that 3D/I's actions would be judged according
to other construction-management firms in the same discipline engaging in similar projects. That
discipline's standard of care, however, is not stated in the contract. Thus, the question presented is
whether Castner Palms was required to present expert testimony as to the standard of care such a
firm should exercise in supervising a similar project. (3)

 In determining whether expert testimony was required in this case, we find guidance in two
recent cases. In Fulgham, a trucking company leased a trailer to a long-haul trucker, and while
transporting goods, the trailer's upper coupler assembly, which contained a loose or rusty bolt, broke
loose, causing the trailer to separate from the tractor and overturn. Fulgham, 154 S.W.3d at 86. The
Court found that expert testimony was required to establish the standard of care since "[t]he upper
coupler assembly, kingpin, and base rail of a refrigerated trailer are specialized equipment, and the
proper inspection and maintenance of those parts involve techniques unfamiliar to the ordinary
person." Id. at 91. Although the Court recognized that a layman may be able to detect whether a
visible bolt is loose or rusty, the Court held that whether that looseness or rust is sufficient to create
a danger required specialized knowledge in the tractor-trailer industry. Id. Thus, an expert was
required to testify as to the standard of care. Id.

 Similarly, in Simmons, a worker brought a negligence action against his maintenance
company when the rail-car mover's loose or worn hydraulic hose caught fire as he used the mover
to transport railroad cars. Simmons, 221 S.W.3d at 111-12. Finding the practices, procedures, and
industry standards with respect to the inspection and maintenance of a rail-car mover engine not
matters within a lay person's general knowledge, the court determined that expert testimony
regarding the appropriate standard of care and whether the maintenance company breached that
standard was required. Id. at 114-15. Although the court acknowledged that an ordinary person
would be able to detect whether a hydraulic hose is loose or worn, the court noted that determining
when that looseness or wear was sufficient to create a dangerous condition would require specialized
knowledge. Id. at 115. "Without expert evidence or testimony, there was no evidence that [the
maintenance company] violated the standard of care for the inspection and maintenance of the
engine, hydraulic pump, or other internal parts of [the rail-car mover] . . . [nor was there any] factual
or evidentiary support in the record concerning . . . the actions that a reasonable maintenance
company would have taken with respect to the hydraulic pump and hose." Id.

 In this case, we cannot conclude that a layman would know whether a construction-management firm's supervisory duties extended beyond simply overseeing the construction as set
out in the approved contractors' design plans. This is not a case where the construction-management
firm hired the contractors and approved their plans; rather, the contract provided, and the record so
reflects, that El Paso County hired the contractors and approved the plans while 3D/I supervised the
construction of those approved plans. Castner Palms argues that Kistenmacher's expert testimony
that Roe negligently designed the retention pond was sufficient for a layman to determine that 3D/I
breached its supervisory duties under the contract. Although a layman may be able to conclude from
Kistenmacher's testimony that the pond was poorly designed and caused the flood, we believe that
whether a construction-management firm's supervisory duties included more than ensuring that the
approved plans were built according to the requisite specifications called for in the plans requires
specialized knowledge in the construction-management firm industry. See, e.g., Fulgham, 154
S.W.3d at 91; Simmons, 221 S.W.3d at 115 (requiring expert testimony of industry standards).

 Castner Palms argues that since the standard of care was contained within the contract,
whether that standard was breached is a question of law reviewed de novo. Although we agree that
interpretations of contractual provisions are reviewed de novo, the contract here did not explain the
standard of care; rather, it simply stated that 3D/I would be held to a standard of care as other
construction-management firms in the same discipline and engaged in similar projects. There was
never any evidence presented as to what that standard of care was. Furthermore, the trial court never
determined whether 3D/I breached the standard of care described in the contract, nor was the jury
instructed that 3D/I did so. Rather, the jury was instructed on "ordinary care," and the sole question
submitted was whose negligence proximately caused the damage to Castner Palms. In other words,
there was never any evidence, interpretation, or determination of the applicable standard of care for
the jury to properly decide negligence on the part of 3D/I.

 Further, even if we were to impute some explanation of the applicable professional standard
of care into the contract, expert testimony would still be required to establish that standard of care. 
In Battaglia, the Supreme Court held that although a contract between a hospital and two
anesthesiologists' professional associations obligated the associations to ensure that the staff they
supplied or supervised complied with standards specified in the contract, evidence that staff breached
those standards during a patient's surgery at the hospital did not establish the requisite standard of
care for a medical-malpractice action against the professional association; rather, competent expert
testimony was necessary to establish the standard of care. See Battaglia v. Alexander, 177 S.W.3d
893, 899 (Tex. 2005). Similarly here, even if the contract identified the applicable standard of care,
competent expert testimony was nonetheless required to establish that standard for construction-management firms. (4)

 Accordingly, because no expert testimony, much less any evidence, was presented as to the
applicable standard of care, we find the trial court erred by denying 3D/I's motion for directed
verdict. We therefore sustain 3D/I's first issue, reverse the judgment of the trial court, and render
judgment for 3D/I. See Hager, 913 S.W.2d at 735-36 (rendering take-nothing judgment against
plaintiffs who failed to produce necessary expert testimony on applicable standard of care). Given
our disposition, we need not reach 3D/I's second issue.


 GUADALUPE RIVERA, Justice


February 10, 2010


Before Chew, C.J., Rivera, J., and Garcia, Judge

Garcia, Judge, sitting by assignment

1. When construction reached 50 percent, the plans provided that the contractors would connect to an
underground pipe for drainage purposes.
2. Castner Palms originally sued Roe, Vistacon, and 3D/I; however, the suit against Roe and Vistacon
settled.
3. Castner Palms characterizes the issue as whether 3D/I can limit its common-law duty owed to third parties
by contractual arrangements. However, whether any common-law duty may be contractually limited is not the issue. 
Rather, the issue is what standard of care 3D/I should have exercised in supervising the construction project.
4. Castner Palms asserts that Kistenmacher's expert testimony was sufficient to establish a breach of 3D/I's
contractual duties. However, Kistenmacher's testimony was solely limited to the cause of the flooding, that is, the
poorly designed and constructed retention pond. Thus, Kistenmacher's opinion solely concerned the negligence of
Roe and Vistacon, the contractors that designed and constructed the pond. Kistenmacher did not discuss a
construction-management firm's standard of care in supervising the design and construction of a similar project.