

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00269-CV

JERRY C. HAMILTON                                       APPELLANT

V.

XTO ENERGY, INC.                                       APPELLEE

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In four issues, Appellant Jerry C. Hamilton appeals the trial court's summary judgment for Appellee XTO Energy, Inc. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Background

On November 7, 2006, Hamilton, a Bobcat Pressure Control, Inc. employee, was working at an oil and gas well site with Craig Childers, an employee of Mercer Well Service, when he injured his hand.[2] Hamilton sued XTO, the well site operator, for negligence.[3] XTO filed two combined traditional and no-evidence motions for summary judgment, which the trial court granted.[4] This appeal followed.

## III. Summary Judgment

In four issues, Hamilton complains that the trial court erred by granting summary judgment for XTO because genuine issues of material fact exist as to whether (1) XTO was a property owner of the well site as defined in civil practice and remedies code chapter 95; (2) Hamilton's injury arose from the condition or use of an improvement to real property under chapter 95; (3) XTO retained control of the well site and had actual knowledge of the danger or condition that

---

[2]When Childers turned on the engine of the rig, Hamilton's hand became trapped between a flat piece of metal and a cable.

[3]Hamilton sued Bobcat but later nonsuited it; the trial court subsequently allowed XTO to designate Bobcat as a responsible third party. Hamilton also sued Mercer. *See Hamilton v. Tex. CES, Inc.*, No. 02-10-00142-CV, 2011 WL 1435238, at *1 (Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op.) (affirming summary judgment for Mercer on limitations grounds).

[4]The trial court granted the no-evidence portion of XTO's first motion but did not specify upon which no-evidence ground or grounds the motion was granted. When it granted XTO's second motion, it also did not specify upon which grounds.

resulted in Hamilton's injury; and (4) XTO owed Hamilton legal duties. The first three issues are all premised on Hamilton having a viable negligence claim, without which the application of chapter 95 is of no significance. *See, e.g.*, *Pasadena Ref. Sys., Inc. v. McCraven*, Nos. 14-10-00837-CV, 14-10-00860-CV, 2012 WL 1693697, at *4 (Tex. App.—Houston [14th Dist.] May 15, 2012, no pet.) (mem. op.) (stating that when chapter 95 applies, a property owner will not be liable for negligence claims arising from failure to provide a safe workplace unless the exception under section 95.003 is met).

In both of its motions for summary judgment, XTO argued that Hamilton was unable to present any competent evidence to show that XTO owed Hamilton a legal duty, that XTO had breached any alleged duty, or that the alleged breach had proximately caused Hamilton's injury.[5] *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (stating that a negligence claim requires showing that the defendant owed the plaintiff a legal duty, a breach by the defendant of that duty, and damages proximately caused by the breach). When the trial court's judgment rests upon more than one independent ground, the aggrieved party must assign error to each ground, or the judgment will be

---

[5]XTO also argued that there was no evidence of actual control by XTO, that it had no duty to warn of open and obvious dangers, and that there was no evidence that it had failed to adequately warn of a dangerous condition of which it had actual knowledge. In the traditional portion of its motions, XTO argued that civil practice and remedies code chapter 95 protected it from liability in that XTO had no control over Hamilton's work and that the alleged dangerous condition on the well site was open, visible, and known to Hamilton. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001–.003 (West 2011).

affirmed on the ground to which no complaint is made. *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied). Therefore, we need not address the issues Hamilton raises because the trial court did not specify upon which ground summary judgment was granted and because Hamilton has failed to adequately address the other grounds upon which the trial court could have granted summary judgment, in particular, XTO's no-evidence ground with regard to proximate cause.

Hamilton's causation discussion on appeal falls within his overarching review of legal duties, in which he merely asserts that either fatigue or an incompetent company man caused his injury. But Hamilton provides no explanation of, or citations to authority to support, how any of these alleged breaches proximately caused his injury. *See* Tex. R. App. P. 38.1(i) (stating that a brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record).[6] And when, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

---

[6]As pointed out in the dissenting opinion, Hamilton does include citations to the record.

Further, even if Hamilton had raised and had provided an analysis of proximate cause in his fourth issue, the components of proximate cause—cause in fact and foreseeability—cannot be established by mere conjecture, guess, or speculation. *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (op. on reh'g). The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about injury and without which the harm would not have occurred. *Doe*, 907 S.W.2d at 477; *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980). Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Doe*, 907 S.W.2d at 477; *see also Hang On II, Inc. v. Tuckey*, 978 S.W.2d 281, 284 (Tex. App.—Fort Worth 1998, no pet.).

Likewise, conclusory statements by an expert are not sufficient to defeat summary judgment. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004). An expert's opinion cannot rest on the expert's subjective interpretation of the facts but must be supported by the facts in evidence. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239–40 (Tex. 2010); *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003). For example, in *Wal-Mart Stores, Inc. v. Merrell*, the supreme court held that an expert's testimony that halogen lamps *can* cause fires did not establish that the particular lamp in question caused the fire at issue in the case. 313 S.W.3d 837, 838, 840 (Tex. 2010) (holding that a doctor's conclusion that failure of the lamp

5

was "'consistent with the facts of [the] case'" amounted to little more than speculation).  And we have previously held that expert opinions and conclusions on causation not supported by facts in the summary judgment record are based on speculation and conjecture.  *See Hanson v. Greystar Dev. & Constr., LP*, 317 S.W.3d 850, 854–55 (Tex. App.—Fort Worth 2010, pet. denied) (stating that, absent factual support, the expert's opinion that the plaintiff's fall on stairs happened because of irregularities in those stairs and because of inadequate lighting was conclusory and constituted no evidence); *see also Connaway v. Vill. Farms, L.P.*, 200 S.W.3d 353, 357–58 (Tex. App.—Dallas 2006, no pet.) (holding that testimony attributing dust in area around collision as coming from a farm— without evidence connecting the dust to the farm—was conclusory and speculative and showed only that the witnesses believed that the dust came from the farm).

## A.  Hamilton's Summary Judgment Responses and Evidence

### 1.  Response to XTO's First Motion

In Hamilton's response to the no-evidence portions of XTO's first motion, he asserted that XTO breached three legal duties:  (1) the duty of ordinary care to provide a reasonably safe workplace and to adequately help employees when Frank Cummings, an independent contractor who supervised the site for XTO as contract completion foreman, left the scene before the injury occurred; (2) the duty of ordinary care with regard to providing rules and regulations for safety; and (3) the duty to protect independent contractors when it retained some control

6

over the details of their work. As on appeal, Hamilton contended that XTO's failure to supervise work hours, to ensure adequate rest—particularly with regard to proper training of supervisors in the face of fatigue information available through the federal government—and to provide for a supervisor on site at all times constituted breaches of legal duties owed to him and proximately caused his injuries.

### a. Fatigue Evidence

Hamilton attached a copy of *Plain Language About Shiftwork*, a 1997 booklet published by the United States Department of Health and Human Services,[7] and he attached a portion of his deposition in which he testified that it

---

[7]The public health summary at the beginning of the thirty-nine page booklet states:

**What are the hazards?**

Shiftworkers and night workers often are tired and sleepy because of their work schedule. Being overly tired makes it difficult to concentrate, which increases the possibility of errors or accidents. This can be a risk both to the worker and to the public. The stress of shiftwork also can aggravate health conditions, such as heart disease or digestive disorders.

**How do these hazards occur?**

Working at night makes it difficult to get enough sleep. Sleep after night work usually is shorter and less refreshing or satisfying than sleep during the normal nighttime hours. Brain and body functions slow down during the nighttime and early morning hours. The combination of sleep loss and working at the body's low-point can cause excessive fatigue and sleepiness. This makes it more difficult to perform well, which increases the risk of accidents. Also, shiftwork can be stressful because of frequent switching from a day

7

was typical for Bobcat employees to work twelve to fourteen hours per day or more, although "[i]t could be two hours, it could be 20." Hamilton also attached his affidavit, in which he stated that he would wake up between 4:00 a.m. and 5:00 a.m. to drive an hour to Bobcat's office, then drive ninety minutes to two hours to the job site, and then work twelve hours, on average, before making the return trip. Hamilton stated that it was not uncommon to work sixteen-to-seventeen-hour days.

Hamilton also attached some of XTO's invoices and job tickets showing workers' hours, although none of these showed either Hamilton's hours or the hours worked by Childers, the Mercer employee who engaged the rig's engine and trapped Hamilton's hand. Several of the work tickets were from companies other than Bobcat or Mercer.[8]

---

to night schedule and because of separation from family and friends. These stresses can be harmful to health.

**How can these hazards be avoided?**

Many workers cannot avoid night or rotating shiftwork. Therefore, this booklet suggests ways of coping with shiftwork. Organizational or group approaches include redesigning the work schedule, redistributing the workload, improving the work environment, and instituting programs to improve worker awareness. Individual approaches include improved sleep strategies, exercise and diet programs, and relaxation techniques.

[8]Some of the various work tickets for hours worked that were billed to XTO list "Ronny Perry Construction" or "ORBIT Construction" at the top; show inconsistent time ranges, varying from 1.5 to 14 hours daily between October 16, 2006, and November 6, 2006; and do not list workers who were present at the accident.

Invoices bearing Mercer's logo show five workers, none of whom were Childers—although some of whom may have been present at the incident—working from 8:00 a.m. to 8:30 p.m. on October 4, 2006; from 5:30 a.m. to 8:30 p.m. on October 5, 2006; from 4:30 a.m. to 9:30 p.m. on October 6, 2006; and from 4:30 a.m. to 8:00 a.m. on October 9, 2006. A Mercer invoice for October 4–9, 2006 billed XTO for 39.5 cumulative hours for "rig and crew," for an additional 8.5 hours of travel, and for an additional 39.5 hours for an additional crewman for the job. The incident involving Hamilton occurred on November 7, 2006, and there is no work ticket from that day included in the record.

Although this evidence suggests that employee fatigue can cause accidents and that circumstances existed under which Hamilton could have been fatigued, Hamilton made no such assertion in his affidavit and did not assert that his fatigue led to the accident. More importantly, none of this evidence even raises an inference, much less a fact question, about whether Childers was fatigued or whether Childers's fatigue, if any, led to the accident.

### b. Supervision Evidence

Hamilton attached the XTO incident investigation report, in which the following were listed as "key facts" and "associated circumstances or conditions":

- Two tasks were being performed at the same time (use of sandline/winchline)[;]

- Hand signals were used but the meanings were mis-identified. A thumbs up was given by one of the BobCat hands in the basket indicating to hold the present position, but operator 1 viewed it as needing to lift it up and thus have the clutch en-gauged [sic][;]

9

- Pre-job safety meeting was held, but this particular hazard/causal factor was unusual and not discussed[;]

- This job requires 2 companies to work together-equipment and people.

- Sandline is not used very often on rigs anymore[;]

- Throttling up the winch line causes the sand line to throttle up when en-gauged. [sic] The air lines are tied together[; and]

- Language barrier.

In a portion of his deposition, Hamilton described how his hand was caught and complained that XTO failed to train its employees because Cummings should have been on site at all times during the operation and "[s]hould have never left and went and voted. He should have stayed there until the job was done and made sure everybody was all right."

Hamilton also attached portions of the deposition by James Yeager, an XTO employee, who testified that Cummings was on site to look over XTO's interests by seeing that the companies XTO had hired were doing the job they had agreed to do. Yeager said that if Cummings saw something that needed to be changed, he was to talk to the contractors' supervisors and that if Cummings saw "something there[,] he would shut it down." Yeager admitted that Cummings was not on site at the time of the incident but said that when Cummings had left was "the best time to go" because Bobcat and Mercer were between processes and "all they [were] doing [was] whipping out their own equipment" and not "pulling pipe."

10

Yeager said that with regard to the incident and better communications, "there was maybe some trouble with hand signals . . . and things like that that they don't maybe totally understand. Somebody made a mistake and so it could be something like that, and like I said, some of them don't speak English very well." He said that multi-tasking could have caused the problem because the Mercer and Bobcat employees were "running the wench line first and they were running the sand line at the same time," when they could have finished one and then worked on the other. Yeager added that he had been told that "it was unusual for them to be doing it this way and so, you know, they are running the equipment down at the same time—at the same time running the sand line back here."[9]

With regard to this evidence, Hamilton does not make any attempt to explain why his injury would not have occurred if Cummings had been at the work site. For example, he does not explain how Cummings's presence would have, or even could have, prevented the miscommunication in hand signals to which the accident report attributed his injury.

---

[9]Yeager also testified that XTO's contractors were responsible for providing safety and training for contractor employees as far as "their tasks, the equipment, and everything—everything that they do. They are required to train their own employees." Hamilton also included a copy of the contract between Cummings and XTO, which makes clear that Cummings was himself an independent contractor working month-to-month with XTO since August 22, 2005.

## 2. Response to XTO's Second Motion

While XTO's first summary judgment motion was pending, Hamilton added more negligence claims against XTO, alleging that XTO had failed to use ordinary care in providing employees adequate help in the performance of work and that XTO was liable for the negligent hiring, supervision, training, and retention of its employees and contractors because it had hired employees without administering drug tests to applicants, without requesting that applicants provide information for background checks, and without requiring formal training or prior experience in the oil and gas field for supervisory positions such as consultants and contract foremen.[10]  Specifically, Hamilton complained that Cummings was not on site when the incident occurred, that Cummings did not have any experience pertaining to snubbing—the activity that had led to Hamilton's injury—and that at least two other accidents pertaining to snubbing units occurred while Cummings was the contract foreman.

In response to XTO's second motion, Hamilton attached the same evidence as he had to his earlier response, but he also attached the following additional evidence pertinent to the alleged duties and breaches:  the master

---

[10]Additional claims recited again by Hamilton had already been raised in his previous petition.

12

services contract between XTO and Bobcat,[11] excerpts from Cummings's deposition, and an affidavit by Dr. Merrill M. Mitler, Ph.D., a sleep expert.

### a. Additional Fatigue Evidence

In his deposition, Cummings stated that twelve hours was a normal work day and that he could not say that fatigue would be a factor at the end of such a day.

In his affidavit, Dr. Mitler testified about his research into fatigue and stated that he had reviewed the XTO incident investigation report, Bobcat's first report of injury, Hamilton's affidavit, and Mercer's daily work reports for other workers dated October 4–9, 2006, and had concluded the following:

- Mr. Hamilton was involved in a work and commuting schedule that limited the amount of rest he could obtain, producing fatigue that would be sufficient to impair attention and motor coordination[;]

- The reported cause of Mr. Hamilton's injury was human error. The work environment at [the well site] involved heavy equipment and multiple operators who spoke different languages and used hand signals to coordinate their actions. In such environments, worker

---

[11]The master services contract provided that Bobcat was responsible, among other things, for providing "all necessary safeguards for the protection of all aspects of the Work and all persons employed directly or indirectly by the Contractor, Subcontractors or third parties." It also stated that XTO's responsibilities were to furnish materials and equipment that it had agreed to furnish, provide access to the site, and furnish necessary construction utilities. And it specified that Bobcat would comply with all federal, state, and local laws, "including, but not limited to . . . the Occupational Safety and Health Act and all those requirements and regulations relating in any way to employment practices and protection of the environment," as well as all applicable XTO rules and regulations relating to the safety and security of persons and property, and plant work hours, among other things.

fatigue can be expected to increase the risk of inattention and human error resulting in work-related injuries[;]

- Fatigue was a contributing cause to the human errors leading up to Mr. Hamilton's injury[; and]

- Mr. Hamilton's employer and/or site supervisor were negligent in allowing their workers to work excessive hours. Such excessive work schedules produce fatigue and lead to increases in human error of the kind that were responsible for Mr. Hamilton's injury.

Dr. Mitler based his opinion on Hamilton's affidavit, the work hours that some of the workers at the site had performed in the month before Hamilton's injury, and the accident's timing near the end of Hamilton's work day. However, none of Hamilton's evidence reflects that he or any other witness to the injury or subsequent injury investigation suggested that fatigue had anything to do with the accident or the miscommunication identified in XTO's incident investigation report as the accident's root cause.

Further, by itself, Dr. Mitler's subjective conclusion that fatigue was a contributing cause to the accident constitutes nothing more than mere speculation.[12] *See TXI Transp. Co.*, 306 S.W.3d at 239. And none of the evidence establishes that Hamilton was actually fatigued, that Childers was fatigued, or that fatigue is what caused Childers to be inattentive or to misinterpret the signal that led to Hamilton's injury.

---

[12]Because there is no evidence raising a genuine issue of material fact as to fatigue as the injury's cause in fact, we do not reach foreseeability. *See Doe*, 907 S.W.2d at 477; *Travis*, 830 S.W.2d at 98.

### b. Additional Supervision Evidence

In his deposition, Cummings admitted that he had no formal training with regard to rig operation and had never done any snubbing, but he also remarked that he would do everything he could to keep a snubbing unit from being rigged up on a well because such units were inherently dangerous, citing two other accidents that involved a snubbing unit. And he stated that he had worked in the oil and gas industry for the majority of his working life and had obtained his experience on the job. Cummings said that he had contracted with XTO after e-mailing his resume to XTO's production superintendant when Cummings learned that XTO was looking for well-site consultants and then had an informal meeting with XTO. He provided references but did not know if XTO had checked them and said that XTO did not drug test him or ask for his criminal background.[13] Cummings said that he had spoken with XTO's production superintendant before leaving the site to vote on the day of the accident and that there was "about another hour's worth of work to do" when he left.

Hamilton's argument that the incident could have been prevented had Cummings been present, properly trained, and experienced in snubbing lacks support in the record to raise a fact issue with regard to proximate cause.

---

[13]Cummings acknowledged a 1972 possession of marijuana conviction for which he was pardoned in 1984 and a DWI in the late 1990s. He also admitted that he was a recovering alcoholic and that his last drink had been on May 17, 1998. Cummings stated that XTO's production supervisor knew that he was a recovering alcoholic.

Hamilton would have needed to produce more than a scintilla of evidence to show that the incident would not have happened but for Cummings's absence, lack of training, or experience in snubbing, which he has not done, and he produced no evidence to show how the presence of a properly trained and experienced on-site supervisor would have prevented the miscommunication attributed to causing the accident. *See Doe*, 907 S.W.2d at 477; *McClure*, 608 S.W.2d at 903. None of Hamilton's evidence raises a fact question about whether or how Cummings's absence or other perceived inadequacies caused the accident.[14]

## B. Conclusion

Assuming without deciding that XTO owed Hamilton one or more of the duties that he claims and breached those duties, based on the record in this case, as set out above, Hamilton failed to produce more than a scintilla of probative evidence that any such breach proximately caused his injury. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (stating that a no-evidence summary judgment is not proper if the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact). Dr. Mitler's report constitutes mere speculation that fatigue contributed to Hamilton's injury, and none of Hamilton's other evidence raises a fact issue on either of the

---

[14]To the contrary, even if Cummings was inadequate to perform his job, his absence would have negated any damage that could have otherwise been caused by his inadequacies.

16

alleged breaches—inadequate supervision by Cummings and worker fatigue— that he claims proximately caused his injuries. Therefore, the trial court did not err by granting XTO's motions for summary judgment on the no-evidence ground pertaining to proximate cause, and we affirm the summary judgment on this ground. *See Martinez v. ACCC Ins. Co.,* 343 S.W.3d 924, 928 (Tex. App.— Dallas 2011, no pet.) ("If the appellant does not challenge one of the grounds for summary judgment, an appellate court may affirm the summary judgment on that ground alone."). We overrule Hamilton's fourth issue and need not address his remaining issues with regard to XTO's affirmative defense. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

Having overruled Hamilton's fourth issue, we affirm the trial court's judgment.

                                        BOB MCCOY
                                        JUSTICE

PANEL: WALKER, MCCOY, and GABRIEL, JJ.

WALKER, J., filed a dissenting opinion.

GABRIEL, J., concurs without opinion.

DELIVERED: September 27, 2012



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00269-CV

JERRY C. HAMILTON                                                    APPELLANT

V.

XTO ENERGY, INC.                                                      APPELLEE

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

I respectfully dissent from the majority opinion's holding that appellant Jerry C. Hamilton failed to adequately brief the proximate-causation element of his negligence claim.[2]  Furthermore, to the extent that the majority nonetheless

---

[1]*See* Tex. R. App. P. 47.4.

[2]Hamilton mentioned or discussed the causation element multiple times (on at least seven separate pages) in his brief, asserting that his injuries were "caused by human error brought on by fatigue," that "[f]atigue caused the accident which forms the basis of this suit and Hamilton's injuries, according to Hamilton's expert witness, Dr. Merrill Mitler," that "XTO's actual knowledge of the

addresses the merits of Hamilton's issues and holds that he failed to present any evidence of causation, I also dissent.

The majority thoroughly discusses the evidence presented by Hamilton to establish causation—a United States Department of Health and Human Services's 1997 booklet titled *Plain Language About Shiftwork*; the affidavit and deposition testimony of Hamilton; deposition testimony of the contract completion foreman on the well site, Frank Cummings, and of XTO employee James Yeager; XTO's invoices and job tickets showing the long hours worked on the well site; XTO's incident investigation report; and the affidavit of sleep expert Dr. Merrill M. Mitler, Ph. D. I will not rehash that evidence here. Nevertheless, the majority concludes that, assuming XTO owed Hamilton a duty and breached that duty, Hamilton "failed to produce more than a scintilla of probative evidence that any such breach proximately caused his injury." *Id.* at 16.

---

fatigue of its employees and failure to warn of the dangers of fatigue at the site proximately caused Hamilton's injuries," that "XTO's breach of duty to provide a reasonably safe workplace caused Hamilton's injury," that "XTO's breach of not providing its employees with adequate help in the form of a competent company man proximately caused Hamilton's injuries," that XTO's breach of its "duty to hire, supervise, train or retain competent employees . . . proximately caused Hamilton's injuries," and that the early departure of the foreman—"who was allegedly responsible for all the work done at the site"—"was the proximate cause of the injuries suffered by . . . Hamilton." Hamilton also specifically discussed his summary judgment evidence of causation with citations to the record. *See* Tex. R. App. P. 38.1(i); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver.").

Applying the appropriate standard of review, examining the entire record in the light most favorable to Hamilton as the nonmovant, and indulging every reasonable inference and resolving any doubts against XTO's motion, I would hold that Hamilton brought forward more than a scintilla of probative evidence that raises a genuine issue of material fact as to the causation element of his negligence claim. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004). I would then address Hamilton's remaining issues. Because the majority opinion does not, I respectfully dissent.

SUE WALKER
JUSTICE

DELIVERED: September 27, 2012