02-11-269-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00269-CV

 

 


 
 
 Jerry C. Hamilton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy, Inc.
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 235th
District Court OF Cooke COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

In
four issues, Appellant Jerry C. Hamilton appeals the trial court’s summary
judgment for Appellee XTO Energy, Inc.  We affirm.

II. 
Background

On
November 7, 2006, Hamilton, a Bobcat Pressure Control, Inc. employee, was
working at an oil and gas well site with Craig Childers, an employee of Mercer
Well Service, when he injured his hand.[2]  Hamilton sued XTO, the
well site operator, for negligence.[3]  XTO filed two combined traditional
and no-evidence motions for summary judgment, which the trial court granted.[4]
 This appeal followed.

III. 
Summary Judgment

In four issues, Hamilton complains that the trial court erred by granting
summary judgment for XTO because genuine issues of material fact exist as to
whether (1) XTO was a property owner of the well site as defined in civil
practice and remedies code chapter 95; (2) Hamilton’s injury arose from the
condition or use of an improvement to real property under chapter 95; (3) XTO
retained control of the well site and had actual knowledge of the danger or
condition that resulted in Hamilton’s injury; and (4) XTO owed Hamilton legal
duties.  The first three issues are all premised on Hamilton having a viable
negligence claim, without which the application of chapter 95 is of no
significance.  See, e.g., Pasadena Ref. Sys., Inc. v. McCraven,
Nos. 14-10-00837-CV, 14-10-00860-CV, 2012 WL 1693697, at *4 (Tex. App.—Houston
[14th Dist.] May 15, 2012, no pet.) (mem. op.) (stating that when chapter 95
applies, a property owner will not be liable for negligence claims arising from
failure to provide a safe workplace unless the exception under section 95.003
is met).

In both of its motions for summary judgment, XTO argued that Hamilton was
unable to present any competent evidence to show that XTO owed Hamilton a legal
duty, that XTO had breached any alleged duty, or that the alleged breach had proximately
caused Hamilton’s injury.[5]  See Nabors Drilling,
U.S.A., Inc. v. Escoto, 288 S.W.3d 401, 404 (Tex. 2009) (stating that a negligence
claim requires showing that the defendant owed the plaintiff a legal duty, a
breach by the defendant of that duty, and damages proximately caused by the
breach).  When the trial court’s judgment rests upon more than one independent
ground, the aggrieved party must assign error to each ground, or the judgment
will be affirmed on the ground to which no complaint is made.  Scott v.
Galusha, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).  Therefore,
we need not address the issues Hamilton raises because the trial court did not
specify upon which ground summary judgment was granted and because Hamilton has
failed to adequately address the other grounds upon which the trial court could
have granted summary judgment, in particular, XTO’s no-evidence ground with
regard to proximate cause.

Hamilton’s causation discussion on appeal falls within his overarching
review of legal duties, in which he merely asserts that either fatigue or an
incompetent company man caused his injury.  But Hamilton provides no explanation
of, or citations to authority to support, how any of these alleged breaches
proximately caused his injury.  See Tex. R. App. P. 38.1(i) (stating
that a brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and the record).[6] 
And when, as here, a trial court’s order granting summary judgment does not
specify the ground or grounds relied on for its ruling, summary judgment will
be affirmed on appeal if any of the theories presented to the trial court and
preserved for appellate review are meritorious.  Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003); Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

Further, even if Hamilton had raised and had provided an analysis of
proximate cause in his fourth issue, the components of proximate cause—cause in
fact and foreseeability—cannot be established by mere conjecture, guess, or
speculation.  Doe v. Boys Club of Greater Dall., Inc., 907 S.W.2d 472,
477 (Tex. 1995); Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex.
1992) (op. on reh’g).  The test for cause in fact is whether the negligent act
or omission was a substantial factor in bringing about injury and without which
the harm would not have occurred.  Doe, 907 S.W.2d at 477; McClure v.
Allied Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex. 1980).  Cause in
fact is not shown if the defendant’s negligence did no more than furnish a
condition that made the injury possible.  Doe, 907 S.W.2d at 477; see
also Hang On II, Inc. v. Tuckey, 978 S.W.2d 281, 284 (Tex. App.—Fort Worth
1998, no pet.).

Likewise, conclusory statements by an expert are not sufficient to defeat
summary judgment.  See IHS Cedars Treatment Ctr. of DeSoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 803 (Tex. 2004).  An expert’s opinion cannot
rest on the expert’s subjective interpretation of the facts but must be
supported by the facts in evidence.  See TXI Transp. Co. v. Hughes, 306
S.W.3d 230, 239–40 (Tex. 2010); Marathon Corp. v. Pitzner, 106 S.W.3d
724, 729 (Tex. 2003).  For example, in Wal-Mart Stores, Inc. v. Merrell,
the supreme court held that an expert’s testimony that halogen lamps can
cause fires did not establish that the particular lamp in question caused the
fire at issue in the case.  313 S.W.3d 837, 838, 840 (Tex. 2010) (holding that a
doctor’s conclusion that failure of the lamp was “‘consistent with the facts of
[the] case’” amounted to little more than speculation).  And we have previously
held that expert opinions and conclusions on causation not supported by facts
in the summary judgment record are based on speculation and conjecture.  See
Hanson v. Greystar Dev. & Constr., LP, 317 S.W.3d 850, 854–55 (Tex.
App.—Fort Worth 2010, pet. denied) (stating that, absent factual support, the expert’s
opinion that the plaintiff’s fall on stairs happened because of irregularities
in those stairs and because of inadequate lighting was conclusory and
constituted no evidence); see also Connaway v. Vill. Farms, L.P., 200
S.W.3d 353, 357–58 (Tex. App.—Dallas 2006, no pet.) (holding that testimony
attributing dust in area around collision as coming from a farm—without
evidence connecting the dust to the farm—was conclusory and speculative and
showed only that the witnesses believed that the dust came from the farm).

A.  Hamilton’s
Summary Judgment Responses and Evidence

1. 
Response to XTO’s First Motion

In
Hamilton’s response to the no-evidence portions of XTO’s first motion, he
asserted that XTO breached three legal duties:  (1) the duty of ordinary care
to provide a reasonably safe workplace and to adequately help employees when
Frank Cummings, an independent contractor who supervised the site for XTO as
contract completion foreman, left the scene before the injury occurred; (2) the
duty of ordinary care with regard to providing rules and regulations for
safety; and (3) the duty to protect independent contractors when it retained
some control over the details of their work.  As on appeal, Hamilton contended
that XTO’s failure to supervise work hours, to ensure adequate
rest—particularly with regard to proper training of supervisors in the face of
fatigue information available through the federal government—and to provide for
a supervisor on site at all times constituted breaches of legal duties owed to
him and proximately caused his injuries.

a.  Fatigue Evidence

Hamilton
attached a copy of Plain Language About Shiftwork, a 1997 booklet
published by the United States Department of Health and Human Services,[7]
and he attached a portion of his deposition in which he testified that it was
typical for Bobcat employees to work twelve to fourteen hours per day or more,
although “[i]t could be two hours, it could be 20.”  Hamilton also attached his
affidavit, in which he stated that he would wake up between 4:00 a.m. and 5:00
a.m. to drive an hour to Bobcat’s office, then drive ninety minutes to two
hours to the job site, and then work twelve hours, on average, before making
the return trip.  Hamilton stated that it was not uncommon to work sixteen-to-seventeen-hour
days.

Hamilton
also attached some of XTO’s invoices and job tickets showing workers’ hours,
although none of these showed either Hamilton’s hours or the hours worked by
Childers, the Mercer employee who engaged the rig’s engine and trapped
Hamilton’s hand.  Several of the work tickets were from companies other than
Bobcat or Mercer.[8]

Invoices
bearing Mercer’s logo show five workers, none of whom were Childers—although
some of whom may have been present at the incident—working from 8:00 a.m. to
8:30 p.m. on October 4, 2006; from 5:30 a.m. to 8:30 p.m. on October 5, 2006;
from 4:30 a.m. to 9:30 p.m. on October 6, 2006; and from 4:30 a.m. to 8:00 a.m.
on October 9, 2006.  A Mercer invoice for October 4–9, 2006 billed XTO for 39.5
cumulative hours for “rig and crew,” for an additional 8.5 hours of travel, and
for an additional 39.5 hours for an additional crewman for the job.  The
incident involving Hamilton occurred on November 7, 2006, and there is no work
ticket from that day included in the record.

Although
this evidence suggests that employee fatigue can cause accidents and that
circumstances existed under which Hamilton could have been fatigued, Hamilton
made no such assertion in his affidavit and did not assert that his fatigue led
to the accident.  More importantly, none of this evidence even raises an
inference, much less a fact question, about whether Childers was fatigued or
whether Childers’s fatigue, if any, led to the accident.

b.  Supervision Evidence

Hamilton
attached the XTO incident investigation report, in which the following were
listed as “key facts” and “associated circumstances or conditions”:

·       
Two
tasks were being performed at the same time (use of sandline/winchline)[;]

·       
Hand
signals were used but the meanings were mis-identified.  A thumbs up was given
by one of the BobCat hands in the basket indicating to hold the present
position, but operator 1 viewed it as needing to lift it up and thus have the
clutch en-gauged [sic][;]

·       
Pre-job
safety meeting was held, but this particular hazard/causal factor was unusual
and not discussed[;]

·       
This
job requires 2 companies to work together-equipment and people.

·       
Sandline
is not used very often on rigs anymore[;]

·       
Throttling
up the winch line causes the sand line to throttle up when en-gauged. [sic] 
The air lines are tied together[; and]

·       
Language
barrier.

In a
portion of his deposition, Hamilton described how his hand was caught and
complained that XTO failed to train its employees because Cummings should have
been on site at all times during the operation and “[s]hould have never left
and went and voted.  He should have stayed there until the job was done and
made sure everybody was all right.”

Hamilton
also attached portions of the deposition by James Yeager, an XTO employee, who
testified that Cummings was on site to look over XTO’s interests by seeing that
the companies XTO had hired were doing the job they had agreed to do.  Yeager
said that if Cummings saw something that needed to be changed, he was to talk
to the contractors’ supervisors and that if Cummings saw “something there[,] he
would shut it down.”  Yeager admitted that Cummings was not on site at the time
of the incident but said that when Cummings had left was “the best time to go”
because Bobcat and Mercer were between processes and “all they [were] doing [was]
whipping out their own equipment” and not “pulling pipe.”

Yeager
said that with regard to the incident and better communications, “there was
maybe some trouble with hand signals . . . and things like that that they don’t
maybe totally understand.  Somebody made a mistake and so it could be something
like that, and like I said, some of them don’t speak English very well.”  He
said that multi-tasking could have caused the problem because the Mercer and
Bobcat employees were “running the wench line first and they were running the
sand line at the same time,” when they could have finished one and then worked
on the other.  Yeager added that he had been told that “it was unusual for them
to be doing it this way and so, you know, they are running the equipment down
at the same time—at the same time running the sand line back here.”[9]

With
regard to this evidence, Hamilton does not make any attempt to explain why his
injury would not have occurred if Cummings had been at the work site.  For
example, he does not explain how Cummings’s presence would have, or even could
have, prevented the miscommunication in hand signals to which the accident
report attributed his injury.




 

2. 
Response to XTO’s Second Motion

While
XTO’s first summary judgment motion was pending, Hamilton added more negligence
claims against XTO, alleging that XTO had failed to use ordinary care in
providing employees adequate help in the performance of work and that XTO was
liable for the negligent hiring, supervision, training, and retention of its
employees and contractors because it had hired employees without administering
drug tests to applicants, without requesting that applicants provide
information for background checks, and without requiring formal training or
prior experience in the oil and gas field for supervisory positions such as
consultants and contract foremen.[10]  Specifically, Hamilton
complained that Cummings was not on site when the incident occurred, that
Cummings did not have any experience pertaining to snubbing—the activity that had
led to Hamilton’s injury—and that at least two other accidents pertaining to
snubbing units occurred while Cummings was the contract foreman.

In
response to XTO’s second motion, Hamilton attached the same evidence as he had
to his earlier response, but he also attached the following additional evidence
pertinent to the alleged duties and breaches:  the master services contract
between XTO and Bobcat,[11] excerpts from Cummings’s
deposition, and an affidavit by Dr. Merrill M. Mitler, Ph.D., a sleep expert.

a.   
 Additional Fatigue Evidence 

In
his deposition, Cummings stated that twelve hours was a normal work day and
that he could not say that fatigue would be a factor at the end of such a day.

In
his affidavit, Dr. Mitler testified about his research into fatigue and stated
that he had reviewed the XTO incident investigation report, Bobcat’s first
report of injury, Hamilton’s affidavit, and Mercer’s daily work reports for
other workers dated October 4–9, 2006, and had concluded the following:

·       
Mr.
Hamilton was involved in a work and commuting schedule that limited the amount
of rest he could obtain, producing fatigue that would be sufficient to impair
attention and motor coordination[;]

·       
The
reported cause of Mr. Hamilton’s injury was human error.  The work environment
at [the well site] involved heavy equipment and multiple operators who spoke
different languages and used hand signals to coordinate their actions.  In such
environments, worker fatigue can be expected to increase the risk of
inattention and human error resulting in work-related injuries[;]

·       
Fatigue
was a contributing cause to the human errors leading up to Mr. Hamilton’s
injury[; and]

·       
Mr.
Hamilton’s employer and/or site supervisor were negligent in allowing their
workers to work excessive hours.  Such excessive work schedules produce fatigue
and lead to increases in human error of the kind that were responsible for Mr.
Hamilton’s injury.

Dr. Mitler based his opinion on Hamilton’s affidavit, the work hours that
some of the workers at the site had performed in the month before Hamilton’s
injury, and the accident’s timing near the end of Hamilton’s work day.  However,
none of Hamilton’s evidence reflects that he or any other witness to the injury
or subsequent injury investigation suggested that fatigue had anything to do
with the accident or the miscommunication identified in XTO’s incident
investigation report as the accident’s root cause.

Further, by itself, Dr. Mitler’s subjective conclusion that fatigue was a
contributing cause to the accident constitutes nothing more than mere
speculation.[12]  See TXI Transp. Co.,
306 S.W.3d at 239.  And none of the evidence establishes that Hamilton was
actually fatigued, that Childers was fatigued, or that fatigue is what caused
Childers to be inattentive or to misinterpret the signal that led to Hamilton’s
injury.




 

b.  
 Additional Supervision Evidence

In
his deposition, Cummings admitted that he had no formal training with regard to
rig operation and had never done any snubbing, but he also remarked that he
would do everything he could to keep a snubbing unit from being rigged up on a
well because such units were inherently dangerous, citing two other accidents that
involved a snubbing unit.  And he stated that he had worked in the oil and gas
industry for the majority of his working life and had obtained his experience
on the job.  Cummings said that he had contracted with XTO after e-mailing his
resume to XTO’s production superintendant when Cummings learned that XTO was
looking for well-site consultants and then had an informal meeting with XTO.  He
provided references but did not know if XTO had checked them and said that XTO
did not drug test him or ask for his criminal background.[13] 
Cummings said that he had spoken with XTO’s production superintendant before
leaving the site to vote on the day of the accident and that there was “about
another hour’s worth of work to do” when he left.

Hamilton’s argument that the incident could have been prevented had
Cummings been present, properly trained, and experienced in snubbing lacks
support in the record to raise a fact issue with regard to proximate cause.  Hamilton
would have needed to produce more than a scintilla of evidence to show that the
incident would not have happened but for Cummings’s absence, lack of training,
or experience in snubbing, which he has not done, and he produced no evidence
to show how the presence of a properly trained and experienced on-site
supervisor would have prevented the miscommunication attributed to causing the
accident.  See Doe, 907 S.W.2d at 477; McClure, 608 S.W.2d at
903.  None of Hamilton’s evidence raises a fact question about whether or how
Cummings’s absence or other perceived inadequacies caused the accident.[14]

B. 
Conclusion

Assuming without deciding that XTO owed Hamilton one or more of the
duties that he claims and breached those duties, based on the record in this
case, as set out above, Hamilton failed to produce more than a scintilla of
probative evidence that any such breach proximately caused his injury.  See Smith
v. O’Donnell, 288 S.W.3d 417, 424 (Tex. 2009) (stating that a no-evidence
summary judgment is not proper if the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact). 
Dr. Mitler’s report constitutes mere speculation that fatigue contributed to
Hamilton’s injury, and none of Hamilton’s other evidence raises a fact issue on
either of the alleged breaches—inadequate supervision by Cummings and worker
fatigue—that he claims proximately caused his injuries.  Therefore, the trial
court did not err by granting XTO’s motions for summary judgment on the
no-evidence ground pertaining to proximate cause, and we affirm the summary
judgment on this ground.  See Martinez v. ACCC Ins. Co., 343 S.W.3d 924,
928 (Tex. App.—Dallas 2011, no pet.) (“If the appellant does not challenge one
of the grounds for summary judgment, an appellate court may affirm the summary
judgment on that ground alone.”).  We overrule Hamilton’s fourth issue and need
not address his remaining issues with regard to XTO’s affirmative defense.  See
Tex. R. App. P. 47.1.

IV. 
Conclusion

Having
overruled Hamilton’s fourth issue, we affirm the trial court’s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL: 
WALKER, MCCOY,
and GABRIEL, JJ.

 

WALKER,
J., filed a dissenting opinion.

 

GABRIEL,
J., concurs without opinion.

 

DELIVERED:  September 27,
2012

 

 



 












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00269-CV

 

 


 
 
 Jerry C. Hamilton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 XTO Energy, Inc.
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 235th
District Court OF Cooke COUNTY

----------

DISSENTING
MEMORANDUM OPINION[15]

----------

          I
respectfully dissent from the majority opinion’s holding that appellant Jerry
C. Hamilton failed to adequately brief the proximate-causation element of his
negligence claim.[16]  Furthermore, to the
extent that the majority nonetheless addresses the merits of Hamilton’s issues
and holds that he failed to present any evidence of causation, I also dissent.

          The
majority thoroughly discusses the evidence presented by Hamilton to establish
causation—a United States Department of Health and Human Services’s 1997
booklet titled Plain Language About Shiftwork; the affidavit and
deposition testimony of Hamilton; deposition testimony of the contract
completion foreman on the well site, Frank Cummings, and of XTO employee James
Yeager; XTO’s invoices and job tickets showing the long hours worked on the
well site; XTO’s incident investigation report; and the affidavit of sleep
expert Dr. Merrill M. Mitler, Ph. D.  I will not rehash that evidence here. 
Nevertheless, the majority concludes that, assuming XTO owed Hamilton a duty
and breached that duty, Hamilton “failed to produce more than a scintilla of
probative evidence that any such breach proximately caused his injury.”  Id.
at 16.

          Applying
the appropriate standard of review, examining the entire record in the light
most favorable to Hamilton as the nonmovant, and indulging every reasonable
inference and resolving any doubts against XTO’s motion, I would hold that
Hamilton brought forward more than a scintilla of probative evidence that
raises a genuine issue of material fact as to the causation element of his
negligence claim.  See Tex. R. Civ. P. 166a(i) & cmt.; Smith v.
O’Donnell, 288 S.W.3d 417, 424 (Tex. 2009); Hamilton v. Wilson, 249
S.W.3d 425, 426 (Tex. 2008); Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex.
2006); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert.
denied, 541 U.S. 1030 (2004).  I would then address Hamilton’s remaining
issues.  Because the majority opinion does not, I respectfully dissent.

 

SUE WALKER
JUSTICE

 

DELIVERED:  September 27,
2012

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-11-00269-CV

 

 


 
 
 Jerry
 C. Hamilton
  
  
  
 v.
  
  
  
 XTO
 Energy, Inc.
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 235th District
 Court
  
 of
 Cooke County (CV08-00384)
  
 September
 27, 2012
  
 Opinion
 by Justice McCoy
  
 Dissent
 by Justice Walker
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

          It
is further ordered that appellant Jerry C. Hamilton shall pay all costs of this
appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Bob McCoy

 









[1]See Tex. R. App. P. 47.4.





[2]When Childers turned on
the engine of the rig, Hamilton’s hand became trapped between a flat piece of
metal and a cable.





[3]Hamilton sued Bobcat but
later nonsuited it; the trial court subsequently allowed XTO to designate
Bobcat as a responsible third party.  Hamilton also sued Mercer.  See
Hamilton v. Tex. CES, Inc., No. 02-10-00142-CV, 2011 WL 1435238, at *1
(Tex. App.—Fort Worth Apr. 14, 2011, no pet.) (mem. op.) (affirming summary
judgment for Mercer on limitations grounds).





[4]The trial court granted
the no-evidence portion of XTO’s first motion but did not specify upon which
no-evidence ground or grounds the motion was granted.  When it granted XTO’s
second motion, it also did not specify upon which grounds.





[5]XTO also argued that there
was no evidence of actual control by XTO, that it had no duty to warn of open
and obvious dangers, and that there was no evidence that it had failed to
adequately warn of a dangerous condition of which it had actual knowledge.  In
the traditional portion of its motions, XTO argued that civil practice and
remedies code chapter 95 protected it from liability in that XTO had no control
over Hamilton’s work and that the alleged dangerous condition on the well site
was open, visible, and known to Hamilton.  See Tex. Civ. Prac. &
Rem. Code Ann. §§ 95.001–.003 (West 2011).





[6]As pointed out in the
dissenting opinion, Hamilton does include citations to the record.





[7]The public health summary
at the beginning of the thirty-nine page booklet states:

What are the hazards?  

Shiftworkers and night workers often are tired and
sleepy because of their work schedule.  Being overly tired makes it difficult
to concentrate, which increases the possibility of errors or accidents.  This
can be a risk both to the worker and to the public.  The stress of shiftwork
also can aggravate health conditions, such as heart disease or digestive
disorders.

How do these hazards occur?

Working at night makes it difficult to get enough
sleep.  Sleep after night work usually is shorter and less refreshing or
satisfying than sleep during the normal nighttime hours.  Brain and body
functions slow down during the nighttime and early morning hours.  The
combination of sleep loss and working at the body’s low-point can cause
excessive fatigue and sleepiness.  This makes it more difficult to perform
well, which increases the risk of accidents.  Also, shiftwork can be stressful
because of frequent switching from a day to night schedule and because of
separation from family and friends.  These stresses can be harmful to health.

How can these hazards be avoided?

Many workers cannot avoid night or rotating shiftwork. 
Therefore, this booklet suggests ways of coping with shiftwork.  Organizational
or group approaches include redesigning the work schedule, redistributing the
workload, improving the work environment, and instituting programs to improve
worker awareness.  Individual approaches include improved sleep strategies,
exercise and diet programs, and relaxation techniques.





[8]Some of the various work
tickets for hours worked that were billed to XTO list “Ronny Perry
Construction” or “ORBIT Construction” at the top; show inconsistent time
ranges, varying from 1.5 to 14 hours daily between October 16, 2006, and
November 6, 2006; and do not list workers who were present at the accident.





[9]Yeager also testified that
XTO’s contractors were responsible for providing safety and training for
contractor employees as far as “their tasks, the equipment, and
everything—everything that they do.  They are required to train their own
employees.”  Hamilton also included a copy of the contract between Cummings and
XTO, which makes clear that Cummings was himself an independent contractor
working month-to-month with XTO since August 22, 2005.





[10]Additional claims recited
again by Hamilton had already been raised in his previous petition.





[11]The master services
contract provided that Bobcat was responsible, among other things, for
providing “all necessary safeguards for the protection of all aspects of the
Work and all persons employed directly or indirectly by the Contractor,
Subcontractors or third parties.”  It also stated that XTO’s responsibilities
were to furnish materials and equipment that it had agreed to furnish, provide
access to the site, and furnish necessary construction utilities.  And it specified
that Bobcat would comply with all federal, state, and local laws, “including,
but not limited to . . . the Occupational Safety and Health Act and all those
requirements and regulations relating in any way to employment practices and
protection of the environment,” as well as all applicable XTO rules and
regulations relating to the safety and security of persons and property, and
plant work hours, among other things.





[12]Because there is no
evidence raising a genuine issue of material fact as to fatigue as the injury’s
cause in fact, we do not reach foreseeability.  See Doe, 907
S.W.2d at 477; Travis, 830 S.W.2d at 98.





[13]Cummings acknowledged a
1972 possession of marijuana conviction for which he was pardoned in 1984 and a
DWI in the late 1990s.  He also admitted that he was a recovering alcoholic and
that his last drink had been on May 17, 1998.  Cummings stated that XTO’s
production supervisor knew that he was a recovering alcoholic.





[14]To the contrary, even if
Cummings was inadequate to perform his job, his absence would have negated any
damage that could have otherwise been caused by his inadequacies.





[15]See Tex. R. App.
P. 47.4.





[16]Hamilton mentioned or
discussed the causation element multiple times (on at least seven separate pages)
in his brief, asserting that his injuries were “caused by human error brought
on by fatigue,” that “[f]atigue caused the accident which forms the basis of
this suit and Hamilton’s injuries, according to Hamilton’s expert witness, Dr.
Merrill Mitler,” that “XTO’s actual knowledge of the fatigue of its employees
and failure to warn of the dangers of fatigue at the site proximately caused
Hamilton’s injuries,”  that “XTO’s breach of duty to provide a reasonably safe
workplace caused Hamilton’s injury,” that “XTO’s breach of not providing its
employees with adequate help in the form of a competent company man proximately
caused Hamilton’s injuries,” that XTO’s breach of its “duty to hire, supervise,
train or retain competent employees . . . proximately caused Hamilton’s
injuries,” and that the early departure of the foreman—“who was allegedly
responsible for all the work done at the site”—“was the proximate cause of the
injuries suffered by . . . Hamilton.” Hamilton also specifically discussed his
summary judgment evidence of causation with citations to the record.  See Tex.
R. App. P. 38.1(i); Perry v. Cohen, 272 S.W.3d 585, 587 (Tex. 2008)
(“Appellate briefs are to be construed reasonably, yet liberally, so that the
right to appellate review is not lost by waiver.”).